458 So.2d 1055 (1984)
James Dwight VICKERS and William Thomas, Jr., Trustee
v.
FIRST MISSISSIPPI NATIONAL BANK.
No. 54408.
Supreme Court of Mississippi.
October 31, 1984.
*1056 J. Murray Akers, Greenville, for appellant.
James K. Dukes, Dukes & Jernigan, Hattiesburg, Michael E. Friedlander, Washington, D.C., for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case presents the substantive question whether, in the context of a third party beneficiary contract, a promisee/shareholder in the beneficiary corporation may on proper proof recover damages of and from his promisor consistent with our recent decision in Bruno v. Southeastern Services, Inc., 385 So.2d 620 (Miss. 1980).
Assuming at least a partially affirmative answer to the substantive question, the case also presents the procedural question whether on this record such rights as the promisee/shareholder may have may be adjudicated summarily consistent with Rule 56, Miss.R.Civ.P.
Substantively, we recognize as valid in this state a rule of law which affords a promisee/shareholder a right to recover foreseeable damages sustained by him or her individually flowing from the promisor's breach of duties imposed upon that promisor and owing to the promisee/shareholder in his or her individual capacity.
Procedurally, we hold that the Circuit Court erred when it granted summary judgment in favor of the promisor dismissing in their entirety the promisee/shareholder's claims. We reverse in part and remand for trial.

II.

A.
The cast of characters is as follows:
(1) James D. Vickers is an adult resident citizen of the Greenville, Mississippi/Lake Village, Arkansas area. He was the original Plaintiff below and is one of the Appellants here. He is the "promisee/shareholder" and is sometimes referred to below merely as "Vickers".
(2) William Thomas, Jr., is an adult resident citizen of Greenville, Mississippi, who is the lawfully appointed, qualified and serving Trustee of the Estate of James D. Vickers, Bankrupt. Trustee Thomas was a Plaintiff below and is an Appellant here under authority of an order of the United States Bankruptcy Court for the Northern District of Mississippi filed February 9, *1057 1981, in In Re James Dwight Vickers, No. GBK 78-00147.
(3) First Mississippi National Bank is a banking association organized, chartered and existing under the laws of the United States and having its principal place of business in Hattiesburg, Mississippi. The Bank was the sole Defendant below and is the Appellee here. In much of the discussion that follows, the Bank is the promisor.
(4) Toche Enterprises, Inc. and Jays & W, Inc. are two separate corporations each of which, at all times relevant hereto, was chartered and existing under the laws of this state. Neither of these corporations is a formal party in this action. Collectively, they are referred to below as "Toche". Toche is the beneficiary in the third party beneficiary setting discussed below.

B.
The facts of this case  and the inferences therefrom and interpretations to be made thereof and ultimately the legal conclusions to be drawn therefrom  are hotly disputed. Because of the present posture of the matter, however, summary judgment having been granted in favor of the Bank and against Vickers, we here state the facts in a light reasonably favorable to Vickers.[1]
In the year 1975, Toche operated a marine construction and repair facility in Ocean Springs, Mississippi. All stock in the Toche corporation was owned by four members of the Toche family. As 1975 drew to a close, the corporation was indebted to First Mississippi National Bank for over $800,000 and its payments were in arrears.
James D. Vickers is a member of a family with substantial experience in the marine construction business, operating primarily through Greenville Shipbuilding Corporation based in Greenville, Mississippi. In December of 1975 and early January of 1976, officers of the Bank engaged Vickers in negotiations regarding his possible acquisition of the Toche facility in Ocean Springs. These negotiations culminated on January 19, 1976, with the execution of a written agreement between (1) James D. Vickers, (2) First Mississippi National Bank and (3) the four members of the Toche family in their individual capacities as stockholders. Toche, the corporation, was not a party to the agreement, although it was obviously a third party beneficiary thereof.
The agreement of January 19, 1976, provided, inter alia:
(1) that the Toche family members should transfer ownership of all stock to Vickers;
(2) that the Bank would loan the Toche Corporation $1,435,000 at 7% per annum repayable over 24 months in four semi-annual payments;
(3) that certain indebtedness  including the over $800,000 owed by Toche to the Bank  would be extinguished ("refinanced") with the loan proceeds;
(4) that Vickers would personally guarantee that portion of the loan from Bank to Toche which constituted new money (approximately $500,000) and further guarantee any other sums advanced by the bank to Toche;
(5) that, in addition, the Bank would provide Toche a line of credit up to $3,000,000.00 for interim construction financing; and
(6) that in the event of the Bank's foreclosure upon Toche collateral, such proceeds would be applied first to that part of the indebtedness guaranteed by Vickers.
Immediately thereafter, Vickers went to Ocean Springs and took over the operation of the Toche marine construction facility. He caused Toche to begin purchases of steel, welding machines and other materials necessary for the construction of vessels. In March of 1976, through Vickers' efforts Toche had obtained contracts for *1058 the construction of marine hulls and began this work. It is in this connection that one of Vickers' primary complaints arises, to wit: the alleged failure of the Bank to provide Toche with interim ship construction financing. Again because of the summary judgment posture of the case, the rest of the story will be told in Vickers' own words as they appear in his affidavit of June 22, 1982.
Paragraphs 3 and 9 of the January 19, 1976, contract state that Defendant would provide Toche with up to $3,000,000.00 in interim financing. These funds are used in the shipbuilding industry to finance vessels while they are under construction. A shipyard cannot operate if no interim financing is available. Thus, without this portion of the January 19, 1976, contract, the remainder would have been worthless to Toche and to me. I would not have entered into the January 19, 1976, Agreement if Paragraph 9 had not been included in the Agreement.
From the time the contract was executed until April, I repeatedly requested First Mississippi National Bank to provide Toche and me with the promised $3,000,000.00 in interim construction funding. First Mississippi National Bank, speaking through Gray Slay, told me that the Bank was engaged in completing the paperwork and in contacting and negotiating with correspondent banks. He promised me that it would be only a short time before Toche and I could obtain the interim financing.
In the meantime, I operated Toche with my own personal funds and out of capital funds, as distinguished from interim financing which was to be furnished by the Defendant. Although I do not at this time have an exact accounting of how much money I ultimately put into Toche, to my best information and belief, the sum is approximately $1,000,000.00.
Also during this time, I attempted to obtain interim financing on my own so that Toche could commence construction of vessels. I was unable to obtain interim construction money because the Defendant had all of the assets of Toche, including my stock, encumbered.
In March, 1976, I entered into two construction contracts, for Hulls 101 and 102, on the strength of Defendant's commitment to provide Toche and me with interim financing. I was to receive approximately $3,000,000.00 for this construction. I commenced work on these vessels, using my personal money, inasmuch as First Mississippi National Bank had not provided me with any interim financing.
In April or May of 1976, I once again called First Mississippi National Bank to inquire about the interim financing. Gray Slay told me that the bank could not lend Toche or me any interim financing funds because to do so would cause the bank to exceed its legal lending limit to a single borrower.
The following day, I traveled to Greenville to consult with my attorney, Philip Terney. Mr. Terney telephoned Defendant, speaking with William A. Pittman and Gray Slay, to inquire about the interim financing. With me listening to both sides of the conversation, Pittman and Slay told us that the Bank was not obligated to provide Toche or me with interim financing because of an agreement we had signed. Defendant ultimately produced an agreement which is a copy of the January 19, agreement except that Paragraph 9, which required Defendant to provide $3,000,000.00 in interim financing, had been crossed out and initialed by only by [sic] Pittman.
In May, I shut down the Toche boat yard. Toche was unable to continue operations for lack of interim financing. At about this same time, I had negotiated construction deals for several supply boats which I could not complete without construction financing. Ultimately, Greenville Shipbuilding Corporation built these boats because Toche was unable to obtain interim financing elsewhere.
From the time that I entered into this contract until October, 1976, and lasting thereafter, I approached numerous banks to attempt to obtain interim financing to *1059 construct boats. These banks included First National Bank of Greenville, Mississippi; of New Orleans, Louisiana; Colonial Bank of New Orleans, Louisiana; Greyhound Leasing Corporation of Chicago; Commercial Bank and Trust of Metarie, [sic] Louisiana; CitiCorp of New York; a large bank in Mobile; The Mississippi Bank; First National Bank of America of California; The Crocker Bank of California; The Bank of England; a Japanese bank; The Ranier Bank of Seattle, Washington; and a bank in Little Rock, Arkansas. I was unable to obtain interim construction funding from any of these banks because the Defendant Bank had a lien on all the assets of Toche, including my stock in the corporation.
Thus, in October, 1976, Toche had been shut down for months, no interim financing was available despite my best efforts to obtain it, and my personal fortune was exhausted. At that time, my economic situation and that of Toche left me with no alternative but yield to the economic threats and coercion of the Defendant Bank and sign the Agreement dated October 6, 1976.[[2]] This Agreement was forced upon me and Toche by Defendant, and represented the only hope I had of operating the shipyard long enough to get my personal money back.
Defendant then undertook to lend interim construction funds directly to those who contracted with Toche for ship construction, rather than to Toche, a mechanism Defendant believed would alleviate legal lending limit restrictions.
Despite the interim financing which then became available, the financial situation of the shipyard was no longer viable. In 1978, Toche was forced into involuntary bankruptcy. As a result of my guarantees of the debts of Toche, I was also forced to take bankruptcy.

C.
On April 12, 1982, Vickers and his Trustee in Bankruptcy commenced this action by filing their complaint in the Circuit Court of Forrest County, Mississippi, naming the Bank as a Defendant. In his complaint Vickers demanded damages of and from the Bank for what amounts to all losses he sustained as a result of the Bank's alleged breach of certain contractual obligations alleged to exist by virtue of the January 19, 1976, agreement, a copy of which was attached to the complaint.
The Bank did not answer but rather on May 18, 1982, filed a motion to dismiss, Rule 12(b)(6), Miss.R.Civ.P., or, in the alternative, for summary judgment, Rule 56, Miss.R.Civ.P., asserting, essentially, three grounds, to wit: Vickers' alleged lack of standing, the failure of the complaint to state a claim upon which relief can be granted, and judicial estoppel. The motion was heard on affidavits submitted by the respective parties and memorandum briefs filed by their counsel. On July 16, 1982, the Circuit Court adjudged that there were no genuine issues of material fact and that First Mississippi National Bank was entitled to judgment as a matter of law and, accordingly, entered final judgment in favor of the Bank and against Vickers and his trustee. En route, the Circuit Court stated:
The decisive issue is plaintiff Vickers' status to bring this action for breach of contract.
These facts are not in issue: There are two written agreements which control the obligations of the defendant in the premises. (The one dated January 19, 1976, Vickers claims is controlling. Defendant claims the subsequent agreement dated October 6, 1976, supersedes and controls. However, defendant claims Vickers is not a principal party to either agreement, and therefore, without status to bring this action.) No demand or claim has been made by defendant *1060 against plaintiffs under either agreement, and defendant has affirmatively waived any such claim. Defendant and Joseph A. Toche, Sr., John Anthony Toche, William R. Toche, Sr., and John Adaulph Toche, sole owners of all capital stock of Toche Enterprises, Inc., and Jay's & W., Inc., are principal parties to the January 1976 agreement. Toche Enterprises, Inc., and Jay's & W., Inc., (both Mississippi corporations) and defendant are principal parties to the October 1976 agreement.
It is determined that Vickers is a guarantor or secondary party in both agreements. The corporation, not Vickers, has the cause of action.
The law of this state controlling in these facts is clearly stated in Bruno v. Southeastern Services, Inc., Miss., 385 So.2d 620 (1980). In Bruno the Court denied to plaintiff, the sole stockholder, a cause of action for damages for alleged breach of contract to the corporation. The Mississippi Court held:
"... that the basis of the suit in this case is wrong to the corporation and plaintiff may not bring suit in his individual capacity to redress a wrong to the corporation. The cause of action belongs solely to the corporate entity, Bruneau's, Inc., and may be asserted only by the corporation itself or by plaintiff in a representative capacity in the form of a shareholder derivative suit. The corporation is an indispensable party to such an action ..."
The rationale for the Mississippi rule is that (1) the corporation is a separate entity and the shareholder does not have a legal interest in its property; (2) multiplicity of suits by individual shareholders will be avoided; (3) impairment to creditors' rights will be avoided since the recovery will belong to the corporation, and (4) corporate recovery benefits all shareholders equally.
IT IS THEREFORE, ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted and plaintiffs' complaint is dismissed at cost of plaintiffs.
Vickers and his Trustee have timely perfected their appeal to this Court. The matter has been competently briefed and argued and is now ripe for decision.

III.
The procedure whereby in a civil action final judgment may be entered summarily and without plenary trial on the merits has been a part of our law since January 1, 1982. Rule 56, Miss.R.Civ.P. Its contours and nuances are becoming familiar and established. See Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983); Bourn v. Tomlinson Interests, Inc., 456 So.2d 747 (Miss. 1984); Biggers v. Fox, 456 So.2d 761 (Miss. 1984); Dethlefs v. Beau Maison Development Corporation, 458 So.2d 714 (Miss. 1984); Dennis v. Searle, 457 So.2d 941 (Miss. 1984); Pearl River County Board of Supervisors v. South East Collections, Inc., 459 So.2d 783 (Miss. 1984).
For present purposes, we need keep well in mind the admonition of the Advisory Committee in its Comment to Rule 56:
A motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues [of fact] to be tried.
In Brown v. Credit Center, Inc., we stated:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
 444 So.2d at 362. See also Dennis v. Searle, 457 So.2d at 944.
*1061 Not all disputed issues of fact may be sufficient to defeat a motion for summary judgment or to require trial on the merits; only material issues of fact. Put another way, if, viewing the evidence in the light most favorable to the party against whom the motion has been made, that party's claim or defense still fails as a matter of law, summary judgment generally ought to be granted, even though there may be hot disputes regarding non-material facts. As will be apparent, this principle has importance with respect to a part of our decision in this case.
Another principle of relevance here is that found in Rule 56(d), Miss.R.Civ.P., to the effect that the Court has authority where appropriate to enter a partial summary judgment on those issues where there are no material disputes of fact and where the moving party is entitled to judgment as a matter of law, leaving the remainder of the case for trial. Brown v. Credit Center, Inc., 444 So.2d at 363; Dennis v. Searle, 457 So.2d at 944. In Brown we stated:
Partial summary judgments when granted have the effect of removing from trial issues that ought not be there. The courts and litigants are thus free to concentrate on the real to the exclusion of the pretended.
 444 So.2d at 363.
Again, as will be apparent, this principle has relevance to the case at bar.
Finally, Vickers reminds us of his right to trial by jury secured by virtue of the constitution of this state. In light of Miss. Const. Art. III § 31 (1890) wherein litigants are vested with that right, Brown correctly admonishes that
"Trial judges must be sensitive to the notion that summary judgment may never be granted in derogation of party's constitutional right to trial by jury."
 444 So.2d at 362.
On the other hand, there is no denial of that right where under the facts tendered the moving party is entitled to judgment as a matter of law. In such instances, granting the motion no more denies a litigant his right to trial by jury than does the sustaining of a demurrer or granting of a peremptory instruction under our former practice.

IV.

A.
The Circuit Court's memorandum opinion sustaining the motion for summary judgment makes clear that it is based upon the notion that Vickers has no standing to sue. As we perceive it, the Circuit Court's opinion does not question that the complaint states a claim against the Bank upon which relief can be granted (to employ the parlance of Rule 12(b)(6), Miss.R.Civ.P.). It merely holds that this claim may be asserted only by the corporation, Toche, and that Vickers is a "secondary party" with no independent standing to sue.
The Circuit Court relies on Bruno v. Southeastern Services, Inc., 385 So.2d 620 (Miss. 1980) which squarely holds that, where the basis of the suit is a wrong to the corporation,
"plaintiff [stockholder] may not bring suit in his individual capacity to redress a wrong to the corporation."
 385 So.2d at 622.
The Bruno opinion further states that
"An action to redress injuries to a corporation, whether arising in contract or in tort, cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative. The rule applies even though the complaining stockholder owns all or substantially all of the stock of the corporation."
 385 So.2d at 622.
The facial similarities of the case at bar to Bruno become reality when we remember that Vickers has sued for recovery of "damages from the loss of income from and the profits of Toche Enterprises, Inc., the loss of his investments, loss of sums due to the United States Internal Revenue Service, ..." Under the rule in Bruno these are in law claims of the corporation *1062 for damage to the corporation with respect to which redress must be sought only in a stockholder's derivative suit. Bruno v. Southeastern Services, Inc., 385 So.2d at 622. Vickers has no standing to assert these claims in his individual capacity. To that extent, the circuit judge was correct and the portion of his judgment which is sustained by the rule in Bruno must be affirmed. Indeed, counsel for Vickers conceded the point at oral argument.

B.
While it includes a Bruno-type claim, the Vickers complaint goes far beyond. Significant for present purposes are the allegations that the Bank had substantial contractual obligations to Vickers individually, as distinguished from those obviously running in favor of the corporation. The alleged breach of obligations said to be owing to Vickers individually forms a part of the basis for this action. A review of the agreement of January 19, 1976, suggests that James D. Vickers is a party to it in his individual capacity and that the Bank undertook substantial obligations owing to Vickers, although for the benefit of the corporation. Moreover, in addition to the Bruno-type damages sought, Vickers and his trustee also claim that Vickers, individually and not just derivatively, has been damaged, and recovery is sought therefor.
Vickers' primary claim over and above those precluded under Bruno is that the Bank breached its obligations to provide interim financing for the construction of marine vessels. To be sure, this is an obligation the beneficiary of which was the corporation. Vickers makes clear in his affidavit, however, the importance of interim financing in the ship construction business and the fact that he would never have become involved in Toche or undertaken any of the obligations imposed upon him personally by the agreement of January 19, 1976, had the Bank not made a commitment for interim construction financing. According to Vickers, having cast his lot with Toche, he had no choice, when the Bank failed to provide the necessary interim construction financing, but to invest his own money. As set forth in his affidavit, Vickers alleges that he put close to a million dollars of his own money into the business as a proximate result of the Bank's failure to honor obligations said to have been imposed upon it by paragraph 9 of the January, 1976, agreement. That money cannot now be salvaged. In addition, Vickers claims that he incurred substantial expenses in searching for interim financing to replace that originally promised but subsequently denied by the Bank.
Without doubt, we are here considering an obligation on the part of the Bank owed to and enforceable by Vickers individually. Back in the Spring of 1976, he could have brought an action for specific performance. There is no reason on principle why he should not now be allowed to prosecute an action for foreseeable damages he has sustained as a proximate result of the breach by the Bank of the obligations it had undertaken in paragraph 9 of the agreement. We certainly cannot say on this record that damages of this nature were not reasonably foreseeable by the Bank back on January 19, 1976, as likely to result if it failed to perform its obligation to provide interim construction financing. See Wright v. Stevens, 445 So.2d 791, 798 (Miss. 1984).
Fundamentally, Vickers asserts a claim predicated upon his contract with the Bank. That contract contains a feature which classifies it as a third party beneficiary contract. In the present context, Bank (promisor) has made promises to Vickers (promisee) for the benefit of Toche (beneficiary).
No one would deny the promisee the right to seek specific performance in the event of the promisor's breach of obligations owing to the beneficiary. Restatement of Contracts 2d § 307 (1979). Our perusal of the treatises reveals a near unanimous view that a promisee may sue a breaching promisor for damages as well. Farnsworth, Contracts 735-736 (1982); Calamari and Perillo, Contracts 629-630 (2d ed. 1977); 4 Corbin, Contracts 237-244 (1951); 2 Williston, Law of Contracts *1063 1131-1134 (rev.ed. 1936). Professor Farnsworth's statement is representative:
The promisee (B), as well as the beneficiary (C), has a right against the promisor (A). In principle, that right is also enforceable by an action for damages or specific performance to the same extent as are other contract rights.
 Farnsworth, supra, at 736.
The effect of the lower court's decision  and of the argument advanced here by the Bank  is that Bruno alters this general rule where the promisee is a shareholder in the beneficiary corporation. What  and all  Bruno holds, however, is that a promisee plaintiff has no standing to sue and recover from a promisor where all damages claimed were in fact sustained by the corporation beneficiary and where the losses incurred by the promisee were wholly derivative from the losses to the corporation. As stated, Bruno, announces a salutary rule. It protects defendant promisor from a multiplicity of suits and promotes the efficient use of judicial resources. Put another way, to the extent that a shareholder may under our law bring a derivative action, he has no standing to sue in his own name.
Across the country there exists a well-recognized complement to Bruno which implements in this context the general rule taken from the treatises cited above. The Fifth Circuit in Empire Life Insurance Co. of America v. Valdak Corp., 468 F.2d 330 (5th Cir.1972) put it this way
"Where the act complained of ... [gives rise to] not only a cause of action in favor of the corporation but also ... [gives rise to] a cause of action in favor of the stockholder, as an individual, for violation of a duty owing directly to him, the stockholder may bring suit as an individual." 468 F.2d at 335 [emphasis in original text]
Other authorities to like effect include: Buschmann v. Professional Men's Association, 405 F.2d 659, 663 (7th Cir.1969); Dann v. Studebaker-Packard Corporation, 288 F.2d 201, 211 (6th Cir.1961); Eden v. Miller, 37 F.2d 8, 9-10 (2d Cir.1930); and Banker's Trust Co. v. Steenbum, 95 Misc.2d 967, 409 N.Y.S.2d 51, 63-65 (1978).
One leading case with somewhat analogous facts is the Second Circuit's decision in Eden v. Miller. There the complaint alleged that the promisee plaintiffs (individuals) entered into an oral agreement with the promisor defendant on terms which provided that a freight forwarding corporation, the beneficiary, was to be organized, financed and operated. The plaintiffs agreed to and did organize the corporation with $40,000 in cash as working capital and entered into its employ. They asserted their best efforts to its management and operation. The defendant agreed to provide the corporation with $60,000 in cash as working capital and to use his best efforts to secure business for it. The plaintiffs by their complaint alleged a breach of contract and damages to them as individuals. The defendant moved to dismiss on the grounds that the plaintiffs, as individuals, stated no cause of action and that such cause of action, if it existed, belonged to the corporation. The motion to dismiss was granted by the district court. In reversing, the Court of Appeals said:
"We will assume for the purposes of this case, without deciding, that the corporation has such right of action, for the recovery of what damages, if any, it has sustained. We are concerned now only with the right of the plaintiffs, as promisees, to maintain an action against the defendant, as promisor, to recover their, not the corporation's, damages, where the promise is for the benefit both of the plaintiffs and of a third party, who may or may not sue".
* * * * * *
"Because they performed their promises by organizing the corporation, taking employment and making an investment in it, in reliance upon the now broken promise of the defendant to give to the business both financial and personal aid, they claimed to have been damaged. For such damage as they can prove they may recover, regardless of any *1064 cause of action the corporation may have against the defendant". 37 F.2d at 9-10 (emphasis added).
The rule derived from the cases cited above is logically consistent with Bruno. The apparent rationale underlying it is sound. This rule and its rationale undergird today's decision not because the courts from which they emanate have any authority in this state but because sound legal principles and reasoning have power wherever they are encountered without regard to origin. Berkline Corp. v. Bank of Mississippi, 453 So.2d 699, 701 (Miss. 1984).
We thus recognize as valid in Mississippi a rule providing that a third party beneficiary contract, wherein the promisee is a shareholder of the beneficiary corporation, may vest in the promisee rights against the promisor enforceable in a direct action by the promisee for damages. Where the promisor's act(s) or omission(s) constitute(s) a substantial breach of a duty imposed by the contract upon the promisor and correlatively a right held by the promisee, as an individual and not in his shareholder capacity, the promisee may in addition to any other remedies available in law recover of and from the promisor such reasonably foreseeable damages as the promisee may have sustained as a proximate result of the breach. Restatement of Contracts 2d §§ 346 et seq. (1979); Wright v. Stevens, 445 So.2d 791, 797-798 (Miss. 1984). The promisee has standing to maintain any such action and enforce any such direct rights (as distinguished from derivative rights) in his individual capacity and in his own name. This is so even though the same act(s) or omission(s) may also give rise to a claim by the beneficiary against the promisor although, of course, no double recovery will be allowed.

V.
The judgment summarily entered by the Circuit Judge must in significant part be reversed. The Circuit Judge was wrong when he held that on his complaint Vickers had no standing to sue with respect to the non-Bruno claims. Indeed, he was wrong in trying to force the entire complaint into the Bruno straightjacket.
Beyond that, there are genuine and substantial issues of material fact intertwined with the question whether the January 19, 1976, agreement imposed binding and subsisting duties upon the Bank, and thus vested rights in Vickers. If these matters be established in the affirmative, there remain on this record genuine issues of material fact which must be resolved before there can be a judicial determination of the scope and contours of those correlative duties and rights. Finally, of course, there are substantial fact questions suggested by this record on the matters of causation, forseeability and damages.
In this context, the judgment entered summarily below is affirmed to the extent, and only to the extent that, it precludes Vickers and his Trustee prosecuting an action for damages suffered (a) by the corporation and (b) by Vickers derivatively in his capacity as a shareholder of the corporation. To this extent, the judgment entered in the Bank's favor below is converted into a partial summary judgment. Rule 56(d), Miss.R.Civ.P.
The judgment below is reversed insofar as it precludes Vickers and his Trustee from seeking recovery of damages, if any, sustained by Vickers in his individual capacity as a proximate result of the Bank's breach, if any, of a valid and subsisting duty or duties, if any, owed by Bank to Vickers individually. The case is remanded for plenary trial on the merits of the issues just stated and for such further proceedings as may be appropriate not inconsistent with this opinion.

VI.
A postscript. The facts stated here have been slanted in Vickers' favor. This is both necessary and proper in that summary judgment was entered against him. No fact stated here should by virtue of this opinion be taken as established for purposes of trial on remand.
*1065 Indeed, all are enjoined to discern from these pages not so much as a whisper of a suggestion how any question of evidentiary or ultimate fact ought to be resolved, or, for that matter, what final judgment ought ultimately to be entered. Such are for trial on the merits.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
NOTES
[1] These facts are drawn from the uncontroverted allegation of Vickers' complaint, from his affidavit made upon personal knowledge on June 22, 1982, Rule 56(e), Miss.R.Civ.P., and upon concessions made by First Mississippi National Bank in its version of the facts.
[2] The Bank contends that the October 6 agreement superseded the one made January 19. Vickers argues several theories as to why the October 6 agreement does not control. We regard this as a matter involving substantial factual components hotly and genuinely disputed, not appropriate for resolution via summary judgment.