Ottis B. CROCKER, Jr., et al.
Plaintiffs,

and

Federal Deposit Insurance Corporation, in its Corporate Capacity,
Plaintiff/Intervenor,

v.

W.P. McMULLAN, et al. Defendants.

Civ. A. No. J84–0603(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 4, 1985.

**964**

Grady F. Tollison, Charles M. Powers, Oxford, Miss., Luke Dove, Chill, Chill, & Dove, Jackson, Miss., for plaintiffs.

Paul Stephens, Jackson, Miss., for FDIC.

Michael Hartung, Royals, Hartung & Davis, and Kenneth G. Perry, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, Miss., for McMullen.

Calvin L. Wells, Jackson, Miss., for John Baxter Burns, III.

Earl Keyes, Keyes, Moss, Piazza & Woods, Jackson, Miss., for Clancy.

David W. Clark, Jackson, Miss., for Burns & Wise.

Russell D. Moore, III, Jackson, Miss., for Denson.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court on the Motion of Plaintiff/Intervenor, Federal Deposit Insurance Corporation ("FDIC"), in its corporate capacity, to Dismiss the Complaint filed by Plaintiffs, Ottis B. Crocker, et al., ("Crocker"), and Plaintiffs' as yet uncertified class of all minority shareholders of the Mississippi Bank ("TMB"), for lack of standing to pursue their claims against Defendants, W.P. McMullan, Jr., et al., as majority shareholders, directors and officers of the now-defunct The Mississippi Bank.

## FACTS

Prior to May 11, 1984, TMB was a banking institution organized and existing under the laws of the State of Mississippi. On May 11, 1984, the Commissioner of Banking and Consumer Finance of the State of Mississippi closed TMB pursuant to *Miss. Code Ann.* § 81–9–5 (1972). Immediately upon closing, the Commissioner petitioned the Chancery Court of the First Judicial District of Hinds County, Mississippi, for an adjudication of TMB's insolvency and for the appointment of FDIC as receiver of TMB. On May 11, 1984, TMB was adjudicated insolvent and FDIC was appointed receiver.

Thereafter, FDIC accepted appointment as receiver of TMB and took control of the assets and affairs of TMB. FDIC, as receiver, then entered into a purchase and assumption agreement with Grenada Bank whereby Grenada Bank assumed certain liabilities and purchased certain assets from FDIC as receiver. The FDIC, as receiver, also entered into the contract of sale with the FDIC in its corporate capacity whereby the corporation purchased all assets not purchased by the Grenada Bank pursuant to the purchase and assumption agreement. Specifically, the FDIC, in its corporate capacity, purchased all contracts, rights, claims, demands and choses in action whatsoever not purchased by Grenada Bank; all loans subject to an option in favor of the Grenada Bank; and all pending claims, actions or judgments, whether known or unknown, which the receiver owned, held, or had against any surety, insurer or other person or persons including, without limitation, any claim against any director, officer or employee arising out of any act or acts of any such person in respect to TMB or its property by virtue of the non-performance or manner of performance of their duties or against any shareholder or holding company of TMB.

On August 13, 1984, Plaintiffs, minority shareholders of TMB, filed suit for themselves and on behalf of a class of minority shareholders in TMB, for damages against certain former directors and/or officers of TMB who were the controlling, or majority, shareholders of TMB. The Plaintiffs' Complaint asserts three separate claims. Count I alleges a violation by Defendants of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Count II asserts a claim based upon various misrepresentations to Plaintiffs as to the financial condition of TMB. Count III is based upon violations by Defendants of fiduciary duties owed as directors and/or officers and controlling shareholders of TMB to TMB minority shareholders.

FDIC moves to dismiss the Plaintiffs' Complaint on the basis that Plaintiffs lack standing to prosecute their claims since such claims are derivative in nature and belong to the FDIC, in its corporate capacity, pursuant to the contract of sale. Alternatively, FDIC moves to stay Plaintiffs' Complaint on the basis that the FDIC is entitled to preferential recovery from Defendants under the "absolute priority rule."

## LAW

1. *Non-Derivative Versus Derivative.*

As a general rule, an action to redress injuries to a corporation, whether arising out of contract or tort, cannot be maintained by a shareholder in his own name but must be brought in the corporate name because the cause of action belongs to the corporation and not the shareholders whose rights are merely derivative. *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d 542, 544 (6th Cir.1985); *Schaffer v. Universal Rundle Corporation,* 397 F.2d 893, 896 (5th Cir.1968); *Vickers v. First Mississippi National Bank,* 458 So.2d 1055, 1061 (Miss.1984); *Bruno v. Southeastern Services, Inc.,* 385 So.2d 620, 622 (Miss.1980). According to *Empire Life Insurance Company of America v. Valdak Corporation,* 468 F.2d 330, 335 (5th Cir.1972),

> [t]he reason for this rule is that each shareholder suffers relatively in proportion to the number of shares he owns and each will be made whole if the corpora-

tion obtains compensation or restitution from the wrongdoer. If each shareholder could sue individually for his losses, the wrongdoer would be subject to "as many suits ... as there were stockholders in the corporation."

Consequently, a shareholder cannot maintain suit in his own name for injuries which affect the corporation as a whole or all its shareholders. *See, e.g., Stevens v. Lowder,* 643 F.2d 1078 (5th Cir.1981); *Gregory v. Mitchell,* 634 F.2d 199 (5th Cir.1981); *Imperial Motors, Inc. v. Chrysler Corporation,* 559 F.Supp. 1312 (D.Mass.1983); *Stirling v. Chemical Bank,* 382 F.Supp. 1146 (S.D.N.Y.1974).

▪ A well-recognized exception to the general rule exists where the injury complained of creates not only a cause of action in favor of the corporation but also a cause of action in favor of a shareholder, as an individual, for violation of a duty owed directly to him. *Empire Life, supra.* at 335. Where the injury to the shareholder's stock is peculiar to him and does not fall alike on other shareholders, the shareholder may maintain an individual action. *Id.* As one court explained,

[a] derivative suit is brought to enforce a cause of action which the corporation itself possesses against some third party, a suit to recompense the corporation for injuries which it suffered as a result of the acts of third parties.... A stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual. *Smith v. Tele-Communication, Inc.,* 134 Cal. App.3d 338, 184 Cal.Rptr. 571, 573 (1982).

Moreover, the wrong necessary to support an individual action by a minority shareholder need not be unique to that shareholder, but may be shared in common by other minority shareholders. *Jones v. H.F. Ahmanson & Co.,* 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464, 471 (1969).

▪ This Court, applying Mississippi law[1], concludes that the claims asserted by Plaintiffs, as minority shareholders, against Defendants, as majority shareholders and directors and/or officers, state individual causes of action. Plaintiffs' suit is clearly not an application for recovery by the corporation or all its shareholders. Damages are sought only on behalf of minority shareholders.

▪ Moreover, the FDIC's contract of sale does not preclude the Plaintiffs' maintenance of this suit. Under the contract of sale, the FDIC, in its corporate capacity, purchased

"all contracts, rights, claims, demands, and choses in action whatsoever not purchased by the Assuming Bank (Grenada Bank) ... and all pending claims, actions or judgments, whether known or unknown, *which the receiver owns,* holds or has against any surety, insurer, or any person or persons whomsoever including, without being limited to, any claim or claims against its directors, officers, or employees arising out of any act or acts of such persons in respect to the Bank or its property, by virtue of the non-performance or manner of performance of their duties or against any shareholder or holding company of the bank."

The FDIC, as receiver, took control of the assets and affairs of TMB. The FDIC, in its corporate capacity, purchased only corporate claims belonging to the receiver— not individual claims belonging to minority shareholders.

Further, the authorities cited by the FDIC are inapposite. None involved a situation analogous to the one *sub judice* where minority shareholders sued majority shareholders for misrepresentation, breach of fiduciary duty, and for RICO violations.[2]

In *Yanow v. Teal Industries,* 178 Conn. 262, 422 A.2d 311 (1979), the plaintiff, a

---

1. State law determines who has suffered the injury and whether or not an action is, in reality, a shareholder's derivative action. *Gadd v. Pearson,* 351 F.Supp. 895, 900 (M.D.Fla.1972). Mississippi adheres to the rule stated above. *Vickers v. First Mississippi National Bank,* 458

So.2d 1055 (Miss.1984); *Bruno v. Southeastern Services, Inc.,* 385 So.2d 620 (Miss.1980).

2. FDIC relies on *Warren v. Manufacturers National Bank,* 759 F.2d 542 (6th Cir.1985); *Gallagher v. Canon U.S.A., Inc.,* 588 F.Supp. 108

minority shareholder, brought an individual action and a shareholder's derivative action against the defendant corporation and its director and officer, claiming that the defendants had committed a series of corporate wrongs resulting in damages to the plaintiff individually and to the corporation. Specifically, the plaintiff alleged that the defendant engaged in nineteen transactions which were not disclosed to him and which had the effect of dismantling the corporation "step-by-step, transaction-by-transaction," depriving the corporation and the plaintiff of income and assets. *Id.* at 322.

The court held that plaintiff's claims were individual and not derivative. In so ruling, the court stated that the plaintiff's

> ... allegations claim a pervasive breach of the fiduciary duty owed by the corporate majority to the sole minority stockholder.... [T]hese causes of action are based upon alleged unlawful acts relating solely to the stock owned by the plaintiff, in violation of the fiduciary duty owed the plaintiff by the defendants, and they thus state individual, and not derivative, claims. [citations omitted].

*Id.* See also, *Jones v. H.F. Ahmanson & Company,* 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464 (Cal.1969).

In *Traylor v. Marine Corporation,* 328 F.Supp. 382 (E.D.Wis.1971), plaintiffs, minority shareholders, sued for damages for the wrongful disposition of corporate assets. The court rejected the contention that the complaint sounded in the nature of a shareholder's derivative action and stated

> [m]y reading of the complaint leads me to the conclusion that it may not be treated as a stockholders' derivative action. While accounting and restitution are sought in connection with the alleged

improprieties, it is clearly not an application for recovery by the corporation or all its shareholders; damages are sought only on behalf of the minority shareholders....

> \* \* \* \* \* \*

> While the conduct described by plaintiffs may have warranted a derivative action on behalf of the corporation, that does not foreclose these plaintiffs from suing in their own right.... Thus, the plaintiffs could have said "You cheated the corporation"; however, they are also entitled to charge *"You cheated us as minority stockholders."*

*Id.* at 384. [Emphasis added].

Plaintiffs claim that between 1982 and 1984, Defendants, as controlling shareholders, directors and/or officers, engaged in a course of mismanagement which resulted in the ruination of TMB. Plaintiffs claim that Defendants prepared false and misleading financial statements and withheld the results of a 1984 Bank audit which would have revealed a net loss of $16,433,-721 and a negative net worth of $499,545. According to Plaintiffs, Defendants finally mailed a letter from TMB to its shareholders which enclosed an unaudited statement of conditions and which glossed over the true financial condition of the Bank.

In Count I, Plaintiffs claim Defendants committed RICO violations by mailing false financial statements and by withholding the 1984 audit. Plaintiffs allege that these acts were a part of a common plan or conspiracy designed to defraud minority shareholders and delay inquiry into the operation of TMB which was being operated solely for the economic benefit of majority shareholders. Plaintiffs maintain that Defendants' conduct constitutes "racketeering activity" and that they were injured in their property by such activity.

(N.D.Ill.1984) and *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341 (N.D.Ill.1984), for the proposition that Plaintiffs' RICO claim against the majority shareholders, directors and/or officers of TMB is a derivative cause of action, belonging only to TMB. However, these cases do not preclude a shareholder with an individual claim from pursuing a RICO violation. These cases only hold that the plaintiffs failed to establish a personal, non-derivative cause of action. *Gallagher* specifically recognized that a shareholder can assert RICO violations if it can show injury in its own right. The Court, on the FDIC's Motion to Dismiss, cannot, at this time, declare that Plaintiffs can prove no set of facts which would entitle them to relief under RICO.

Count II asserts a claim for misrepresentation based on the release of false and misleading financial statements which Plaintiffs claim they relied upon in retaining their stock and in taking no action regarding the management or financial condition of TMB.

Count III alleges a claim for breach of fiduciary duty owed by Defendants as controlling shareholders, directors and/or officers to minority shareholders.

■ This Court cannot state, on FDIC's Motion to Dismiss, that these claims are not personal to Plaintiffs, as minority shareholders. Taking all allegations of Plaintiffs' Complaint as true, as we are required to do on a motion to dismiss, the Court is not prepared to find, at this time, that it appears beyond all doubt that Plaintiffs can prove no set of facts which would entitle them to the relief requested. A review of the Complaint reveals that the gravamen of the Plaintiffs' Complaint does not allege an injury to TMB or all of its shareholders. Instead, Plaintiffs allege that particular shareholders profited and other shareholders were wronged. *See, e.g., Traylor v. Marine Corporation,* 328 F.Supp. at 384. Specifically, Plaintiffs allege that the controlling majority shareholders injured the Plaintiffs, as minority shareholders, by their mismanagement and false and misleading financial statements. As a result of the alleged misconduct by Defendants, Plaintiffs' stock was rendered worthless. This, the courts have found, is sufficient to constitute an individual cause of action. *See, e.g., Davis v. United States,* 451 F.2d 659, 662 (3rd Cir.1971); *Traylor v. Marine Corporation,* 328 F.Supp. at 384; *Yanow v. Teal Industries,* 422 A.2d at 322. As Plaintiffs note, where majority shareholders are the wrongdoers, a derivative action is not an effective remedy because the wrongdoers—the majority shareholders—would be the beneficiaries of any recovery obtained by a derivative action. Accordingly, the FDIC's Motion to Dismiss is denied.

■ In light of this Court's holding that Plaintiffs are entitled to maintain this action individually, we now consider FDIC's alternate Motion to Stay this proceeding based on the "absolute priority rule" which allows general creditors of a corporation to recover against corporate assets before shareholders. In support of its Motion, FDIC relies upon *FDIC v. American Bank Trust Shares,* 412 F.Supp. 302 (D.S.C. 1976), *vacated on other grounds,* 558 F.2d 711 (4th Cir.1977), *on remand,* 460 F.Supp. 549 (1978), *aff'd. on other grounds,* 629 F.2d 951 (1980) (ABTS).

FDIC's Motion to Stay is denied for two reasons. First, *ABTS* involved derivative claims against the officers, directors and employers of the bank. 460 F.Supp. at 551. Since Plaintiffs' action is non-derivative, *ABTS* is not applicable.

Second, Plaintiffs seek damages against the majority shareholders, directors and/or officers—not against TMB. Consequently, the absolute priority rule, which seeks to preserve corporate assets for the benefit of general creditors, does not come into play here where corporate assets are not involved. Accordingly, FDIC's Motion to Stay is denied.