Ottis B. CROCKER, Jr., et al.,
Plaintiffs-Appellees,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,
Intervenor-Appellant,

v.

W.P. McMULLAN, et al., Defendants.

No. 86–4546.

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1987.

William F. Goodman, Jr., Paul J. Stephens, Jackson, Miss., for intervenor-appellant.

Luke Dove, Jackson, Miss., Grady F. Tollison, Oxford, Miss., for plaintiffs-appellees.

Before JOLLY, HIGGINBOTHAM and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In an attempt to bypass the general principles of standing in deriviative actions that usually bar individual shareholder suits, a class described as "minority shareholders" filed this nonderivative action against a bank's "controlling shareholders," on the theory that the minority had suffered individual harm not suffered by the corporation. Their theory has failed, and the derivative blockade has prevailed over the minority's hard-fought efforts to break through.

I

On May 11, 1984, the Mississippi State Commissioner of Banking closed the Mississippi Bank ("the Bank") pursuant to Miss.Code Ann. § 81–9–5 (1972). The Bank was adjudicated insolvent in state court, and FDIC was appointed receiver.

FDIC and Grenada Bank ("Grenada") entered a purchase assumption agreement in which Grenada assumed certain of the Bank's liabilities and purchased part of the Bank's assets. FDIC, in its corporate capacity, purchased all the Bank's remaining assets.[1]

On August 13, 1984, certain shareholders ("the Crockers") filed a nonderivative lawsuit on behalf of a class of minority shareholders, in which the Crockers were included, seeking damages from the former directors and/or officers of the Bank, who were also the controlling or majority shareholders. The complaint alleged (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68; (2) common law misrepresentation to the minority shareholders regarding the Bank's financial condition; and (3) common law breach of a fiduciary duty to the minority shareholders on the part of the directors, officers and controlling shareholders. Federal jurisdiction was based on the RICO claim.

The district court granted FDIC's motion to intervene, and FDIC moved to dismiss the Crockers' complaint under Fed.R.Civ.P. 12(b)(6). FDIC argued that the Crockers lacked standing because their claims were derivative and belonged to the corporation, not to the minority shareholders in their individual capacities. Alternatively, FDIC moved to stay the complaint under the "absolute priority rule." The district court denied FDIC's motions, holding that the Crockers, as minority shareholders, had al-

leged an individual injury that was sufficient to create a nonderivative cause of action. Following certification of the district court's order pursuant to Fed.R.Civ.P. 54(b), FDIC appealed.

## II

Because federal jurisdiction in this case is predicated on the Crockers' RICO claim, we begin by examining the alleged RICO violation in Count I of the complaint. In Count I, the Crockers primarily allege that the defendants pursued a scheme to defraud the minority shareholders by mailing false, inaccurate and misleading financial statements and reports in order to lull "the minority shareholders of [the Bank] into a false sense of security and to postpone inquiries or complaints concerning the operation of the Bank." More specifically, the complaint alleges that the defendants' actions are indictable as two or more acts of mail fraud, 18 U.S.C. § 1341, within a period of ten years constituting a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).[2] Count I further states that the Bank is an enterprise engaged in interstate commerce within the meaning of 18 U.S.C. § 1961(4); the defendants were employed by or associated with the Bank as required by 18 U.S.C. § 1962(c); and the defendants conspired to violate 18 U.S.C. §§ 1962(b) and (d). Finally, the Crockers contend in Count I: "Plaintiffs and the Plaintiff class have been injured in their property by reason of the aforesaid RICO violations by Defendants."

---

**1.** Specifically, FDIC, the corporation, purchased all contracts, rights, claims, demands and choses in action not purchased by Grenada; all loans subject to an option in favor of Grenada; and all pending claims, actions or judgments, known or unknown, that the receiver (FDIC) owned, held, or had against any surety, insurer or other person including, without limitations, claims against any director, officer or employee arising out of acts to the Bank or its property by virtue of the nonperformance or manner of performance of their duties or against any shareholder or holding company of the Bank.

**2.** The parties have not raised the issue whether the defendants' actions constituted a pattern of racketeering activity. We nonetheless take this opportunity to question once again whether the occurrence of two or more instances of mail or

wire fraud in connection with the same discrete offense is sufficient to form a pattern of racketeering activity under 18 U.S.C. §§ 1961(5), 1962(c). *Compare R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985) (multiple mailing in connection with a single sale is sufficient for a "pattern"), with *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423 (5th Cir.1987) (criticizing *R.A.G.S.*) and *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce,* 785 F.2d 1274, 1280 n. 7 (5th Cir.1986) (questioning pre-*Sedima* definitions of "pattern"). Indeed, it is unclear in this case whether multiple mailings occurred or whether there was but one "mailing of a letter from [the Bank] to its shareholders" on March 15, 1984. Complaint, paragraph 26. We need not attempt to clarify this allegation since we dispose of this case on other grounds.

To withstand FDIC's motion to dismiss, the Crockers must allege in their complaint the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In addition, a standing requirement must be met: "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.* at 3285–86. Thus, the issue in this case is whether the Crockers and the class of minority shareholders that they represent have suffered any individual injury to their property that is distinct from an injury to the corporation and therefore have standing to maintain a *nonderivative* RICO action. We hold that the Crockers lack standing and reverse the district court's denial of the motion to dismiss.

## A.

■ State law determines whether a shareholder may maintain a nonderivative action. We must therefore review Mississippi law to determine whether the Crockers have standing to bring this action individually.

■ Mississippi adheres to the general rule that an action to redress injuries to a corporation cannot be maintained by a shareholder individually but must be brought as a derivative action in the name of the corporation. *Vickers v. First Mississippi National Bank*, 458 So.2d 1055 (Miss.1984); *Bruno v. Southeastern Services, Inc.*, 385 So.2d 620 (Miss.1980).[3] Mississippi courts have also recognized that injury to shareholders in the form of a diminution in the value of stock is a loss that is recoverable only by the corporation in a direct action or by the shareholders in a derivative action. *Bruno*, 385 So.2d at 621; *see also Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir.1981).

Acknowledging Mississippi's adoption of the general rule articulated in *Vickers* and *Bruno*, the district court held, however, that the Crockers' claim fit within the widely recognized exception to this rule; that is, a shareholder may maintain a nonderivative action for the violation of a duty owed directly to the shareholder as an individual. *Empire Life Ins. Co. v. Valdak Corp.*, 468 F.2d 330, 335 (5th Cir.1972); *Vickers*, 458 So.2d at 1063. The district court reasoned that because the Crockers alleged "that the

**3.** In *Bruno v. Southeastern Services,* the sole shareholder of a corporation brought a nonderivative action, alleging that the defendant breached a contract to provide equity financing for the corporation. The plaintiff sought damages "for the destruction of the value of his stock in the corporation," 385 So.2d at 621. The Mississippi Supreme Court affirmed the defendant's demurrer holding that a shareholder, and even a corporation's sole shareholder, may not bring an individual cause of action to redress a wrong to the corporation, such as destruction or depreciation in the value of the shareholder's stock. Quoting *Schaffer v. Universal Rundle Corp.,* 397 F.2d 893 (5th Cir.1968), the court noted, however, an exception to this rule: "The rule does not apply in a case where the stockholder shows a violation of duty owed directly to him." *Bruno,* 385 So.2d at 622.

The Mississippi Supreme Court applied the exception to the general rule in *Vickers v. First Mississippi National Bank,* 458 So.2d 1055 (Miss. 1984). In *Vickers,* the court permitted the sole shareholder in a corporation to sue a bank individually for the bank's failure to provide interim financing to the corporation. The court stressed that the bank's obligation to the corporation was predicated on the shareholder's con-

tract with the bank and was owed to and enforceable by the shareholder individually. *Id.* at 1062. The Mississippi Supreme Court held that certain claims (those for damages from the lost corporate income, profits and investments and lost sums due to the IRS) were *"Bruno*-type claims" and that the plaintiff shareholder had no standing to assert these claims individually. With respect to these claims, the general rule applied: redress for damage to the corporation could only be sought in a stockholder's derivative suit. *Id.* at 1062. However, claims predicated on the shareholder's own contract with the bank were distinguishable and could be asserted in a nonderivative action. The court explained:

What—and all—*Bruno* holds, however, is that a promisee plaintiff has no standing to sue and recover from a promisor where all damages claimed were in fact sustained by the corporation beneficiary and where the losses incurred by the promisee where wholly derivative from the losses to the corporation. ... Put another way, to the extent that a shareholder may under our law bring a derivative action, he has no standing to sue in his own name.

*Id.* at 1063.

controlling majority shareholders injured the ... minority shareholders, by their mismanagement and false and misleading financial statements," the Crockers' complaint stated an individual cause of action. *Crocker v. McMullan*, 623 F.Supp. 963, 968 (D.C.Miss.1985).

FDIC argues that the district court erred because the minority shareholders suffered only a diminution in the value of their shares, a loss that, under Mississippi law, is recoverable only by the corporation in a direct action or by the shareholders in a derivative action. *Bruno*, 385 So.2d at 621; *Stevens*, 643 F.2d at 1080. FDIC further contends that in a RICO claim, or any other federal statutory action, a plaintiff has no standing if the alleged injury is based on a diminution in the value of the stock. *Gaff v. FDIC*, 814 F.2d 311 (6th Cir.1987); *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843 (2d Cir.1986); *Warren v. Manufacturers National Bank of Detroit*, 759 F.2d 542 (6th Cir.1985).

The parties do not dispute that under Mississippi law a shareholder does not have standing to bring a direct cause of action when the only damage alleged is a diminution in the value of corporate shares. The Crockers contend, rather, that the injury they incurred is not solely the diminished value of their stock. They argue that the controlling shareholders pursued a scheme to defraud the minority shareholders by misrepresenting as sound the financial condition of the Bank. The misrepresentations artificially inflated the price per share of the Bank stock and, at the same time, lulled the minority shareholders into *not* selling their stock. The controlling shareholders were then able to sell their personal shares for an undeserved profit, while effectively denying the minority shareholders such an opportunity to sell their stock. For want of a better term, the Crockers' alleged injury is best described as a "lost profit opportunity."[4]

### B.

Despite the Crockers' attempt to distinguish their injury from the classic model of diminution in the value of corporate stock, the end result was that all shareholders, as well as the Bank, lost the entire value of the stock. Essentially, the Crockers argue that the class of minority shareholders would have sold their stock on an indefinite date, at an artificially inflated (yet, unspecified) price, thereby realizing a profit (or at least minimizing their loss), if only they had known the true financial condition of

---

4. We note that the Crockers' "lost profit opportunity" theory of the alleged injury was presented in their briefs and at oral argument; it is not set forth as such on the face of the complaint. The complaint states in pertinent part:

23. Defendants caused and/or approved and/or acquiesced in preparation of various financial statements and reports which were false, inaccurate, and/or misleading....

....

26. Defendants caused the results of the Touche Ross & Company Report to be kept from the shareholders of [The Mississippi Bank] or approved and/or acquiesced in such, until March 15, 1984, at which time Defendants caused and/or approved and/or acquiesced in the mailing of a letter from [The Mississippi Bank] to its shareholders enclosing such.

27. Defendants caused and/or approved and/or acquiesced in the language of the March 15, 1984 letter, which, coupled with an enclosed unaudited statement of condition of [The Mississippi Bank] dated February 29, 1984, glossed over the true financial condition of [The Mississippi Bank] and the extent of its financial problems.

....

29. Because of the aforesaid actions of Defendants, [The Mississippi Bank] failed in May 1984, *rendering [The Mississippi Bank] stock of Plaintiffs and the Plaintiff class worthless* ... (emphasis added).

In Count I of the complaint, the alleged RICO violation, the plaintiffs allege injury in their property by reason of the defendants' RICO violations, but do not specify *how* they were injured. However, in paragraph 44 of Count II and again in paragraph 49 of Count III the complaint states: "Plaintiffs and the Plaintiff class have been damaged to the extent of the *loss in market value of their stock in [The Mississippi Bank]*" (emphasis added).

Although it is certainly arguable that, on its face, the complaint alleges only diminished stock value, an injury insufficient to justify the plaintiffs' nonderivative action, we will assume that the complaint meets the minimal requirements for notice pleading in Fed.R.Civ.P. 8 and alleges the theory of injury that the plaintiffs have presented in their briefs and at oral argument.

the Bank.[5] They do not contend that the class or any member thereof desired specifically to sell their stock at a given point, but were deterred from effectuating a sale because of the misrepresentations. The claim is only that *if* they had known that the Bank was failing, they would have made every effort to rid themselves of the stock. We find this claim too speculative to state any injury to the shareholders, apart from a diminution in the value of their stock. It is our view that the alleged "lost profit opportunity" was, in reality, no profit opportunity at all.

The flaw in the Crockers' argument is that it assumes a market for the stock existed at an artificially high price. This inflated price, and hence the particular market for the stock, was maintained only because of the wrongdoing of the Bank's controlling shareholders, who concealed material financial information from the shareholders and the public that would have demonstrated the failing condition of the Bank.[6] It follows that, had this information been released, the stock price would have immediately and precipitously fallen especially if, as is implicit in the Crockers' theory, an entire class of shareholders had simultaneously dumped their stock on the market. Thus, there would have been no market for the stock at the artificially high price. Without such a market, the Crockers' envisioned "profit opportunity" evaporates into hardly more than an illusion.[7]

5. While we in no way purport to impose the purchaser-seller standing requirements, i.e., the *Birnbaum* rule, established for Rule 10b–5 securities actions on the Crockers' RICO claim (which, of course, was predicated on mail fraud and not fraud in the sale of securities), we nonetheless find it instructive to note that in *Blue Chip Stamps v. Manor Drug Store,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court warned of the dangers involved in granting standing to a class of nonpurchaser plaintiffs, similar to the class now before us, who assert such a speculative claim:

> Three principal classes of potential plaintiffs are presently barred by the *Birnbaum* rule. First are potential purchasers of shares ... who allege that they decided not to purchase because of an unduly gloomy representation or the omission of favorable material which made the issuer appear to be a less favorable investment vehicle than it actually was. *Second are actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material.* Third are shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b–5. It has been held that shareholder members of the second and third of these classes may frequently be able to circumvent the *Birnbaum* limitation through bringing a derivative action on behalf of the corporate issuer if the latter is itself a purchaser or seller of securities....
>
> ....
>
> The virtue of the *Birnbaum* rule ... is that it limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates. ... In the absence of the *Birnbaum* doctrine, bystanders to the securities marketing process could await developments on the sidelines without risk, claiming that inaccuracies in disclosure caused nonselling in a falling market and that unduly pessimistic predictions by the issuer followed by a rising market caused them to allow retrospectively gold opportunities to pass.
>
> .... In Ultramares Corp. v. Touche ... Chief Judge Cardozo observed with respect to "a liability in an indeterminate amount for an indeterminate time to an indeterminate class":
>
>> "The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences."

421 U.S. at 737–48, 95 S.Ct. at 1926–31 (emphasis added, citations omitted).

6. It is uncertain whether the Crockers' argument takes into account the fact that the controlling shareholders concealed material information to which the public was equally entitled. If the Crockers had received this information and sold their stock for a profit before the public was made aware of the Bank's failing condition, such a profit would have resulted from insider trading in violation of the securities laws. It is too much to ask the court to recognize an injury based on a lost profit to which no one was lawfully entitled.

7. We wish to emphasize that our legal analysis of the injury to the minority shareholders for purposes of standing under RICO is not meant to belittle the very real economic harm that the Bank shareholders have suffered. Although there can be no doubt that the harm inflicted has been financially devastating to certain shareholders, we are constrained in our legal analysis by the plaintiffs' claim as presented in the complaint before us. It is on this basis that

We cannot help but observe the troublesome paradox presented by the Crockers' theory: on the one hand, they claim the defendants' scheme caused their injury; yet, on the other hand, without the scheme, the minority shareholders could never have realized the artificially high profit that they claim to have unjustly lost. In sum, the Crockers complain that the scheme that harmed the minority shareholders also presented a unique profit opportunity, which the plaintiff class unfortunately missed.[8] In any event, on this theory, the Crockers cannot plead injury sufficient to confer standing under RICO.

Finally, as we have previously stated, whether this action is derivative or not is governed by Mississippi state law. However, the district court, citing case law from other jurisdictions, seemed to recognize a nonderivative cause of action based upon an injury that the controlling majority shareholders had inflicted on the minority shareholders. *Crocker*, 623 F.Supp. at 968. Not surprisingly, the only injury to the Crockers that the district court articulated in its opinion was a diminution in the Bank's stock value:

> As a result of the alleged misconduct by Defendants, *Plaintiffs' stock was rendered worthless*. This, the courts have found, is sufficient to constitute an individual cause of action. *See, e.g., Davis v. United States*, 451 F.2d 659, 662 (3d Cir.

1971); *Traylor v. Marine Corporation*, 328 F.Supp. at 384; *Yanow v. Teal Industries*, 422 A.2d at 322.

*Id.* (emphasis added).[9]

We have already noted that Mississippi courts generally do not permit a plaintiff to bring a nonderivative action if the only injury alleged is the diminution in stock value. For this reason, the district court erred in applying the relevant Mississippi case law.

We therefore must reject the reasoning of the district court and conclude that because the only injury the Crockers have effectively alleged is a decline in the value of the Bank stock, they have failed to state a direct, personal injury distinct from that suffered by the corporation that would permit them to maintain an individual cause of action. We thus hold that the Crockers, alleging no cognizable individual injury, do not have standing to assert their RICO claim in a nonderivative action.

### III

Because the Crockers lacked standing to assert their RICO claim nonderivatively, the claim upon which they predicated federal jurisdiction, the district court should have declined to exercise its pendent jurisdiction over the remaining state law claims and should have dismissed the complaint. *United Mine Workers v. Gibbs*, 383 U.S.

---

we must conclude that, as a matter of law, the plaintiff shareholders have failed to plead the kind of individual injury required to survive the FDIC's motion to dismiss this RICO claim.

**8.** The Crockers do not allege in their pleadings or briefs how the class intended to dispose of its stock. Any contention, however, that it would have sold the stock in a manner other than by public trading, is highly speculative because there is no averment that an identifiable buyer or group of buyers was prepared to purchase the class's stock. In such a scenario, it becomes even more speculative to suggest that the *class* suffered an identifiable injury; that is, that all shareholders except the controlling shareholders, would have banded together in a group or even subgroups to dispose of their stock in a block or blocks to unknown individuals or groups.

**9.** Reviewing the precedent cited by the district court, we find that the Third Circuit's holding in *Davis v. United States Gypsum Co.* is not con-

trary to the general rule regarding derivative actions that we must apply in this case; that is, a shareholder's individual losses, such as liability on notes the shareholder has personally guaranteed, may be brought nonderivatively. However, a shareholder must file a derivative action for losses belonging to the corporation, such as diminution in stock value. 459 F.2d at 662. While the remaining case law cited by the district court might be interpreted to recognize, in *those* jurisdictions, a nonderivative cause of action on behalf of the minority against the controlling shareholders where special factors existed, this is not useful precedent to the resolution of this case. In the light of the Mississippi Supreme Court's holdings in *Bruno* and *Vickers*, only a derivative action will lie if the sole injury is diminution in the stock value. Indeed, the Crockers concede as much and have therefore attempted (unsuccessfully) to distinguish their injury from mere loss of stock value.

715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Slaughter v. Allstate Ins. Co.,* 803 F.2d 857 (5th Cir.1986). We therefore do not address the remaining issues raised in this appeal.

## IV

In conclusion, the district court erred by denying FDIC's motion to dismiss the Crockers' complaint. We therefore reverse and remand to the district court to enter a judgment dismissing the complaint.

REVERSED and REMANDED.