BRADLEY, Judge.
Frank Porter sued International Paper Company for workmen’s compensation benefits. After an ore tenus hearing the trial court found that Porter had not proved that his injury was work related. Porter appeals. We affirm.
In workmen’s compensation cases our review of factual matters is limited to an examination of the evidence presented at trial to determine if there was any legal evidence to support the trial court’s findings. Lankford v. International Paper Co., 454 So.2d 988 (Ala.Civ.App.1984); Allen v. Diversified Products, 458 So.2d 1063 (Ala.Civ.App.1984); Battles v. Thomas R. Foster Pulpwood Co., 444 So.2d 876 (Ala.Civ.App.1984).
The trial court found that Porter failed to meet his burden of proving that his injuries “arose out of and in the course of his employment.” The claimant bears the burden of proving a causal connection between his work and his injuries for his injuries to be compensable under the Alabama Workmen’s Compensation Act. Section 25-5-31, Code 1975. See also, Ray Motels, Inc. v. Griffin, 428 So.2d 107 (Ala.Civ.App.1983); Slimfold Manufacturing Co. v. Martin, 417 So.2d 199 (Ala.Civ.App.1981); Big B Discount Drugs, Inc. v. Parker, 401 So.2d 115 (Ala.Civ.App.1981).
Viewing the evidence in light of the appropriate presumptions, the following was revealed at trial.
The testimony was hotly disputed. Porter worked as a bundler for International Paper. His job was to remove heavy bundles of paper bags from a conveyor belt, turn, and place them on a pallet. On the evening of July 12, 1979 Porter contends that he caught the heel of his work shoe in a metal rail in the floor of the warehouse, causing him to fall. He finished his shift, though he claims to have felt pain in his back, left knee, and thigh. No one saw him fall. Porter contends that he attempted to report the accident at shift change but could not since no one was in the first-aid office. The nurses contend that a nurse would have been at first aid since shift change is their busiest time of day. The usual procedure for company employees to report an on-the-job injury was to report it immediately to their supervisor. Porter did not do this, though he had followed the procedure with previous accidents.
On Friday, July 13, 1979, Porter received a letter warning him about his unexplained absences from his job. He admits to a • history of absenteeism. Though he claims to have been in discomfort, Porter went to work that day for fear of losing his job. He claims to have told nurse Marie May about his accident. The nurses’ records reflect that Porter talked instead to nurse Ruth Reynolds, who gave him Tylenol and a muscle relaxant for pain in his left knee and thigh, and that he did not tell her that his pain was the result of a work-related injury. It should be noted that Porter completed his full shift that day. Nurse Reynolds also testified that she did not ask Porter how he was injured because the employee usually says whether the injury is work related or not.
Porter called in sick the following Monday and went to see his physician, Dr. Hunte, who diagnosed him as having muscle spasms, kept him out of work until July 30th, and gave him Valium. Porter complained to Dr. Hunte of pain in his left knee, left arm, and shoulder; he did not complain of back pain. Porter had previously seen Dr. Hunte on March 3, 1979 with back pain that Dr. Hunte diagnosed as back strain. When Porter saw Dr. Hunte on July 30, 1979 for a followup from his visit after the alleged July 12 incident, Dr. Hunte noted that Porter was still having back pain, evidently stemming from his March visit. Dr. Hunte testified that Porter had been in chronic back pain since March 1979.
On reporting to work on the 30th, Porter was sent by International Paper to see Dr. Harris, an orthopedic surgeon, at Porter’s request. Dr. Harris referred Porter to Dr. Shopfner, a radiologist, to have an arthro-gram on his knee. The arthrogram, done on August 2, showed no injury. Porter’s *148 knee was examined by Dr. Harris again on August 3, and no injury except the knee strain was found. He did not complain of any back pain. Porter was released on August 6 to do light work. Dr. Harris saw Porter for the final time on August 10, when Porter was released without any residual disability. Dr. Harris testified that if Porter suffered torn cartilages in his left knee he must have done so later. Porter was soon back to his regular job, which he performed without incident until the plant went on strike on August 22, 1979. The plant went through a period of strikes and layoffs, but Porter was able to work for six weeks beginning in December 1979, for five weeks beginning February 1980, and most of April 1980. He reported no difficulty working and missed no days at work due to his leg or back. In April 1980 he was fired for his protracted unexplained absences from work.
In February or March 1980 Porter sought employment at another company. He failed his physical when they diagnosed him as having a herniated disc. Porter went to his physician, Dr. Hunte, and was diagnosed as having torn cartilage in his left knee. Dr. Hunte sent Porter to Dr. King, an orthopedic surgeon, in May 1980. Porter told Dr. King that he injured his knee at work on July 12, 1979 but that he had hurt his back four or five years previously. He underwent surgery in July 1980 to remove a torn cartilage from his left knee. In October 1980 he underwent surgery by Dr. Bridges, a neurosurgeon, to remove a herniated disc. Dr. Bridges stated that he could not tell when Porter injured his back. Porter alleges no new injuries to his leg or back since July 12, 1979.
As previously noted, the record is filled with conflicting testimony. However, it is the trial court’s duty to resolve the conflicts in the evidence and then to weigh and interpret that evidence. Allen, supra; Edgewood Service Center v. Hogan, 440 So.2d 1076 (Ala.Civ.App.1983). This court does not weigh the evidence, but only looks to see if there is any evidence to support the trial court’s findings. Jasper Community Hospital v. Hyde, 397 So.2d 153 (Ala.Civ.App.1981).
No one saw Porter fall, and he did not report the incident until the next day. Though he was examined by several physicians and specialists immediately after he reported his 1979 accident, none of them diagnosed his injuries as more than minor. The first time Porter was diagnosed as having serious back and leg problems was February or March 1980. Thus, we find support in the record for the trial court’s conclusion that Porter produced insufficient evidence to prove that he sustained a work-related injury.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.