966 So.2d 832 (2007)
William H. DURHAM, Appellant
v.
UNIVERSITY OF MISSISSIPPI, Appellee.
No. 2006-CA-01388-COA.
Court of Appeals of Mississippi.
October 2, 2007.
*833 L. Breland Hilburn, Jackson, Walter Jerome Blessey, Carroll Louis Clifford, Jackson, attorneys for appellant.
Camille Henick Evans, Jackson, Peter H. Barrett, Robert C. Galloway, Gulfport, attorneys for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On November 27, 2001, William H. Durham filed his original complaint against Mississippi Space Commerce Initiative (MSCI) and Allan Falconer, in the Circuit Court of Harrison County, for damages that he suffered personally from an alleged breach of a commercial lease agreement purportedly entered into by MSCI and Gulfport Shopping Center, Inc. On July 15, 2005, Durham filed an amended complaint naming the University of Mississippi as a defendant in the place of MSCI. On May 1, 2006, the University filed a motion to dismiss, or in the alternative, a motion for summary judgment. A hearing was held on the motion on June 23, 2006, and on July 14, 2006, the trial court granted the dismissal, agreeing with the University of Mississippi that Durham did not have standing to proceed with his claim against them. On July 25, 2006, the court denied Durham's motion to reconsider. Aggrieved by the court's decision, Durham appeals and asserts the following issues for this Court's review: (1) the trial court erred in applying the rule of Bruno as Durham's cause of action was for personal injuries, not injuries to a corporation, and (2) that Durham does have standing to sue, as he was a third-party beneficiary of the lease executed between Gulfport Shopping Center, Inc. and the University of Mississippi. Finding no error, we affirm.

FACTS
¶ 2. MSCI operated under the Joint Sponsored Research Agreement (JSRA) between the National Aeronautics and Space Administration (NASA), the University of Mississippi, and the State of Mississippi, with its designated agent the Mississippi Department of Economic and Community Development, having a legal existence for a term of five years from April 7, 1998, to April 7, 2003. The purpose *834 of MSCI was to increase Mississippi's involvement in the remote sensing industry development at the national level.
¶ 3. According to the JSRA, MSCI would be managed by an Executive Management Council (EMC), consisting of Dr. Robert Khayat, Chancellor of the University of Mississippi; Roy Estess, Director of NASA's Stennis Space Center; and James Heidelberg, Director of the Mississippi Department of Economic and Community Development. Dr. Allan Falconer was the Executive Director of MSCI. Under the JSRA, the EMC "shall provide executive direction and establish policy in the conduct of MSCI activities, operating under a full consensus model for decision-making." Falconer, as the executive director, had the responsibility of "operation and management of MSCI."
¶ 4. On March 10, 1999, Gulfport Shopping Center, Inc., of which Durham was a minority shareholder, proposed a commercial lease agreement to MSCI,[1] by and through Falconer. The lease agreement was for improved real property owned by Gulfport Shopping Center, Inc., specifically the building previously occupied by Bruno's, i.e., "Foodworld," in Gulfport. The named landlord on the lease agreement was Gulfport Shopping Center, Inc. and the named tenant was MSCI. According to deposition testimony by Falconer, at the time he and Durham discussed the lease agreement, he communicated to Durham that "MSCI was not a competent legal entity . . . it was a partnership or agreement between the parties." Additionally, he testified he expressed that the lease agreement needed to be presented to MSCI's Executive Management Council as quickly as possible, in an effort to "get things moving." Also, Durham stated in deposition testimony that Chancellor Khayat informed him that the lease agreement would need the Board of Trustees of State Institutions of Higher Learning's (IHL) approval to move forward.
¶ 5. The IHL's minutes from April 15, 1999, reflect their approval of the lease agreement. However, the University of Mississippi maintained that IHL's approval was subject to "(1) all funding for payments under the lease being provided by NASA, and (2) the approval of the terms of the lease by the Mississippi Attorney General." Furthermore, the University asserts that because NASA never approved any funding for the lease agreement, the proposed agreement was not valid. On the other hand, Durham asserted that the University of Mississippi was obligated on the lease agreement pursuant to Falconer's signature and the IHL's approval on April 15. On March 10, 2000, according to Durham's deposition testimony, Tom Starling[2] received a one sentence fax stating, "MSCI is no longer interested in pursuing this deal."[3]
¶ 6. On November 27, 2001, Durham filed his original complaint, naming MSCI and Falconer as defendants. The amended complaint, naming the University of Mississippi in the place of MSCI, was filed on July 15, 2005. The University filed a motion to dismiss it on July 29, 2005. The trial court held a hearing on the matter on *835 June 23, 2006. On July 14, 2006, the court entered an order granting the University of Mississippi's Rule 12(b)(6), motion to dismiss, finding that Durham lacked standing to pursue his claim individually, rather, the claim for damages should be made in the name of the corporation, Gulfport Shopping Center, Inc. Durham's motion for reconsideration was denied on July 31, 2006. He appeals arguing that the trial court erred in its interpretation of Bruno, finding Durham did not individually have standing to bring his damages claim.

STANDARD OF REVIEW
¶ 7. This Court reviews a Rule 12(b)(6) motion to dismiss with a de novo standard of review. Ralph Walker, Inc. v. Gallagher, 926 So.2d 890, 893(¶ 4) (Miss.2006) (citing Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 513(¶ 9) (Miss.2005)). Under a de novo standard, we will affirm a grant or reverse a denial of a Rule 12(b)(6) motion to dismiss, where there are no set of facts that would afford relief to the opposing party. Gallagher, 926 So.2d at 893(¶ 4) (citing Lowe v. Lowndes County Bldg. Inspection Dep't, 760 So.2d 711, 712(¶ 6) (Miss.2000)).

ISSUES AND ANALYSIS
(1) Whether the trial court erred in applying the rule of Bruno as Durham's cause of action was for personal injuries, not injuries to a corporation.
¶ 8. Durham argues that the trial court erred in its application of Bruno when it granted the University's motion to dismiss. He asserts that his action was for personal damages, not damages suffered by the corporation; therefore, he should be allowed to pursue his claim. We disagree.
¶ 9. It is a well settled Mississippi law that a corporation is a separate, distinct entity from its stockholders. Illinois Cent. R. Co. v. Miss. Cotton Seed Prods., Co., 166 Miss. 579, 589, 148 So. 371 (1933). In Bruno v. Southeastern Services, Inc., 385 So.2d 620, 622 (Miss.1980), Mississippi adopted the rule that
"an action to redress injuries to a corporation, whether in contract or in tort, cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholder whose rights are merely derivative. The rule applies even though the complaining stockholder owns all or substantially all of the stock in the corporation." Id.

Bruno was a stockholder of a corporation and sought relief from Southeastern Services, Inc. for a breach of an oral agreement. Id. at 620. While the Bruno court stated an exception to this rule, where a claim may arise when the individual plaintiff can show that the opposing party owed him a duty directly, we are not persuaded that Durham has shown that to be the case for the University of Mississippi. Id. at 622. Therefore, Durham, as an individual shareholder of Gulfport Shopping Center, Inc., does not have standing to pursue his claim for damages from an alleged breach of the commercial lease.
¶ 10. According to the record, Durham personally made the mortgage payments for the subject matter property, sometime between Spring of 1998 and Spring of 1999 until Spring of 2000.[4] Durham asserts that because his claim was brought to redress *836 injuries personally incurred by him, not damages the corporation incurred, that Bruno is not the controlling law in this matter. Durham points out that in his amended complaint he made it clear that his claim was for damages he personally suffered. The complaint states, "In reliance upon the lease agreement, the plaintiff personally undertook to make the payment of mortgage and other obligations of Gulfport Shopping Center, Inc." The complaint further states that there was "no injury to the corporation, the injury was personal to the Plaintiff. . . ." However, the commercial lease agreement was between Gulfport Shopping Center, Inc. and MSCI; therefore, we do not find that the University of Mississippi owed any duty directly to Durham. Additionally, if there were a duty owed by the University of Mississippi at all, then it would be to Gulfport Shopping Center, Inc., the corporation named as the landlord to the purported commercial lease agreement.
¶ 11. Furthermore, we agree with the University's contention that Durham's payments of the mortgage, as a shareholder in Gulfport Shopping Center, Inc., were additional investments in the corporation. We are not persuaded by Durham's contention that he "invested his own money to pay the mortgage payments and other necessary payments in order to maintain the property," in reliance on representations by the University of Mississippi to the extent that such representations created a direct duty to Durham. In Vickers v. First Mississippi Nat'l Bank, 458 So.2d 1055, 1061-62 (Miss.1984), the court addressed the exception stated in Bruno regarding when a shareholder can pursue a claim for damages he has suffered personally. Id. The court affirmed the circuit court's granting of summary judgment, as to the Bruno portion of the claim; however, it reversed and remanded Vickers's third-party beneficiary claim. Id. at 1062. We find the facts in Durham's claim to be very similar to the portion of Vickers where the court affirmed the grant of summary judgment based on the rule of Bruno. Specifically, Durham's claim for losses suffered as a result of his voluntarily assuming payments of the mortgage on the property is much like Vickers's claims for recovery of "damages from the loss of income from and the profits of Toche Enterprises, Inc., the loss of his investments, loss of sums due to the United States Internal Revenue Service. . . ." Id. at 1061. "Under the law of Bruno, these are in law claims of the corporation for damage to the corporation with respect to which redress must be sought in the form of a stockholder's derivative suit." Id. (citing Bruno, 385 So.2d at 622). Durham maintains that his claim is for damages personally incurred and not for damages suffered by the corporation; however, this argument is not well taken. Durham voluntarily undertook the duty to make the mortgage payments, which were a benefit to the corporation, Gulfport Shopping Center, Inc. We do not agree that the University of Mississippi violated a duty owed directly to Durham from the alleged commercial lease agreement; therefore, the dismissal of Durham's claim for lack of standing was proper. The Vickers court affirmed the circuit court's grant of summary judgment as to this portion of the claim. We find that Durham's claim for recovery of losses suffered to be similar in nature and affirm the circuit court's grant of dismissal for lack of standing. This issue is without merit.
(2) Whether Durham does have standing to sue, as a third-party beneficiary of the lease executed between Gulfport Shopping Center, Inc. and the University of Mississippi.
¶ 12. Durham asserts that he has standing to bring his claim as third-party *837 beneficiary of the alleged lease agreement between Gulfport Shopping Center, Inc. and MSCI. He relies on the court's ruling in Burns v. Washington Savs., 251 Miss. 789, 795, 171 So.2d 322 (1965), which states "a third person may sue on a contract made for his benefit between others to the consideration of which he is a stranger." In other words, the Burns court recognized a third-party beneficiary cause of action. However, after reviewing the record before us and the arguments presented, we disagree that the facts support this assertion. Additionally, we find that Durham did not present his third-party beneficiary claim before the circuit court, and it is not proper for us to review the alleged error when this is the first time the issue has been raised. Ory v. Ory, 936 So.2d 405, 409(¶ 9) (Miss.Ct.App.2006). Durham argues that his complaint and amended complaint were sufficient to put the University of Mississippi on notice that he would claim standing as a third-party beneficiary to the proposed commercial lease agreement. However, we are not persuaded by this fact and do not find anywhere in the record where Durham asserted his claim as a third-party beneficiary to the proposed lease agreement other than in his principal appellant brief. Therefore, this issue is procedurally barred from our review.
¶ 13. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The lease agreement states the tenant as "Mississippi Space Commerce Initiative, a Mississippi Corporation."
[2] Durham that he had met with Tom Starling to discuss this matter because he was a lawyer in Jackson who worked on another real estate transaction that Durham was involved with. After they talked, Durham said Starling wrote "some letters to Khayat, maybe Jimmy Heidel, Mary Ann Connell. . . ."
[3] The March 10, 2000 fax was sent by Jim Steel, who according to Durham's deposition testimony retired soon after that correspondence.
[4] Durham's brief states that he personally undertook the mortgage payments from March 10, 1999 until March 10, 2000. The University of Mississippi's brief states that Durham began making the mortgage payments in May 1998, when Bruno's stopped leasing the property.