# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00262-COA

ANGELA A. AVERY                                           APPELLANT

v.

THE UNIVERSITY OF MISSISSIPPI                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/2018 |
| TRIAL JUDGE: | HON. JAMES McCLURE III |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GOODLOE TANKERSLEY LEWIS |
| ATTORNEYS FOR APPELLEE: | J. CAL MAYO JR. |
| | SARAH KATHERINE EMBRY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 05/07/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1. This case stems from Angela Avery's dismissal from her employment at the University of Mississippi (University) as part of the Annual Giving team in the Development Office. The University of Mississippi Personnel Action Review Board (PARB)[1] upheld her employment dismissal, which the Chancellor of the University subsequently affirmed. Avery filed a petition for writ of certiorari in the Lafayette County Circuit Court – the statutory method for seeking review of University employment decisions and the basis for

---

[1] "The PARB is a quasi-judicial administrative panel that has the authority to review and overturn staff employment decisions." *Smith v. Univ. of Miss.*, 797 So. 2d 956, 958 (¶4) (Miss. 2001).

the instant action. The circuit court dismissed her petition for lack of jurisdiction because Avery failed to post a bond with security within six months of the University's termination decision.

¶2. Avery now appeals, arguing a bond is not necessary in this situation and that even if it were, there are extenuating circumstances excusing her inability to post bond. Therefore, she claims the circuit court erred in dismissing her petition for writ of certiorari. We agree, and find that under the particular facts of this case there were extenuating circumstances hindering Avery's ability to post bond. Therefore, we reverse the circuit court's dismissal and remand for further proceedings consistent with this opinion.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶3. On February 2, 2017, Avery was terminated by the University. For fifteen years, Avery had been employed by the University Development Office and the University Foundation in various capacities related to fund-raising. For the last two years, she was part of the Annual Giving team in the Development Office. One of her primary duties was creation and management of the University's online crowd-funding platform – Ignite Ole Miss. Through Ignite Ole Miss campaigns, she helped raise over $2.5 million for the University.

¶4. While the reasons for Avery's termination are not relevant to the issues presented for appeal, and are in dispute, we shall discuss some of the allegations for context. In November 2016, the University undertook "Progressive Discipline" for what Avery described as personality conflicts among members of the Annual Giving team. In December

2016, Avery received a "Final Warning" regarding "dismissive, confrontational and defensive" behavior at a meeting. Avery contends that further conflict arose when, in January 2017, the University began searching for a new director of Annual Giving. Avery claimed that certain members of the search committee had "gross conflicts of interest" with a candidate who made it to the final round of interviews, while other more qualified candidates were rejected. Avery privately discussed this matter with individuals at the Development Office and Foundation. Ultimately, however, the candidate at issue was not hired.

¶5. On February 1, 2017, Avery was given twenty-four hours to decide whether to resign or be terminated for "inappropriate actions" during the search for the director. When Avery did not respond, the University terminated her on February 2. Avery requested a written explanation for the reasons of her termination. In response, on February 23, 2017, Avery received a formal letter from the University, stating the reasons were failure "to improve your job performance after repeated counseling and after verbal and written warnings," which were documented in prior letters to her. Additionally, "[p]revious supervisors had difficulty working with you." Finally, there were "ethical concerns" about Avery "ask[ing] others to assign appeal codes to several gifts that had been attributed to the Ole Miss Fund at the time of receipt," which would benefit Avery's "Ignite numbers." Avery contends this reason for discharge "was contrived and essentially a sham." She alleges that her termination is retaliatory and that she intends to implicate whistle-blowing laws and regulations if her case proceeds.

¶6.     Avery requested the PARB review the University's termination decision. In March 2017, consistent with University procedure, the PARB conducted a grievance hearing. Numerous witnesses testified for both Avery and the University. The PARB unanimously upheld Avery's employment dismissal. In May 2017, Avery appealed to the University's chancellor, who denied the appeal. He found the original termination decision and the PARB decision upholding the termination were supported by substantial evidence and were not arbitrary or capricious.

¶7.     Generally, Avery complains that throughout the entire termination process the University has never given explicit or consistent reasons for her termination. Avery claims she was ambushed at the PARB hearing because reasons given for dismissal at the hearing were different from reasons stated in the February 23 letter. Also, reasons were given for termination that were beyond the twelve-month time limit for the University's progressive discipline procedure. Finally, Avery contends that to the extent she was discharged for discussing issues related to the search for the director of Annual Giving, the University violated her First Amendment right to engage in protected activity about matters of public concern. At some point, Avery also filed an ethics complaint with the University Office of Equal Employment and Regulatory Compliance, but she is unaware of the outcome of the investigation.

¶8.     On September 29, 2017, Avery filed a petition for writ of certiorari in the circuit court in order to appeal the PARB's decision, pursuant to Mississippi Code Annotated section 11-51-93 and -95 (Rev. 2012), which was the proper procedure for appealing the University's

4

termination decision. Section 11-51-93 discusses the bond requirement for the petition.

¶9.    Avery's attorney claims he was aware of the statute's bond requirement. The record includes his affidavit regarding his attempts to obtain the bond. On the day Avery's attorney filed the petition, he spoke to the clerk of the circuit court about setting the bond as required by statute. The clerk advised him that she did not set bonds on appeals; a circuit court judge assigned to the case must provide it. The same day, Avery's attorney advised the University's attorney that he was trying to get the assigned judge, Andrew Howorth, to set the bond. He then met with Judge Howorth, who advised Avery's counsel he would be unable to set bond because he and all of the other judges in the district were recusing themselves from the case. On September 29, 2017, Avery's counsel sent an email to the University explaining his dilemma.

¶10.    On October 10, 2017, an order of recusal for all of the judges in the district was entered. On October 19, 2017, Avery filed a motion to determine and/or set bond because it appeared no one was willing or able to set bond in the matter. On October 27, 2017, the Honorable James McClure was appointed as a special judge on the case. On November 3, 2017, Avery's counsel wrote to Judge McClure and enclosed the motion to determine bond and requested a hearing on it and his petition for writ of certiorari.

¶11.    On November 28, 2017, the University filed a motion to dismiss. The University argued that Avery failed to comply with the statutory appeal requirements of section 11-51-93 and -95, which require a person seeking review of a state university tribunal's decision to take certain steps within six months of the decision, including filing a petition for writ of

5

certiorari with an affidavit, and a bond, with security. Because Avery failed to file the bond, with security, within six months of the PARB's decision, the University claimed Avery's petition must be dismissed for lack of jurisdiction. In December 2017, the parties noticed a hearing for all pending motions in the matter on January 25, 2018. At the hearing, the circuit court agreed with the University and dismissed Avery's petition for lack of jurisdiction. Avery timely appealed to this Court.

## ANALYSIS

¶12. Avery raises two issues. First, she questions whether a bond was even applicable in an appeal of this nature. Second, she argues that if a bond was required, her failure to post a bond was excused by good cause or extenuating circumstances. We find a bond was required by statute, its posting is jurisdictional, but that Avery's failure to post the bond was excused by extenuating circumstances.

¶13. Because jurisdictional matters are questions of law, the standard of review is de novo. *T. Jackson Lyons & Assocs. P.A. v. Precious T. Martin Sr. & Assocs. PLLC*, 87 So. 3d 444, 448 (¶10) (Miss. 2012).

### I.  Section 11-51-93's Bond Requirement

¶14. Avery requests that the Court consider whether a bond was necessary in this instance, and if so, what type of bond – a cost/appeal bond or a supersedeas bond. Section 11-51-93[2]

---

[2] The statute provides in pertinent part:

All cases decided by a justice of the peace, whether exercising general or special jurisdiction, may, within six months thereafter, on good cause shown by petition, supported by affidavit, be removed to the circuit court of the county, by writ of certiorari, which shall operate as a supersedeas, the party,

6

permits removal of "[a]ll cases decided by a justice of the peace" when supported by affidavit, to the circuit court by writ of certiorari within six months of the decision. Section 11-51-95 provides that "[l]ike proceedings" such as "judgments of all tribunals inferior to the circuit court" may be reviewed in the same manner. The Mississippi Supreme Court has held that "tribunals inferior" include "hearing panels at state universities . . . whose employment decisions may be reviewed by writ of certiorari pursuant to [section] 11-51-95." *Smith v. Univ. of Miss.*, 797 So. 2d 956, 959 (¶9) (Miss. 2001).

¶15.    Avery notes the statute is ambiguous as to what type of bond is required. Section 11-51-93 states: "[The] petition . . . by writ of certiorari . . . shall operate as a supersedeas, the party, in all cases, giving bond, with security . . . ." In *Lyons*, the supreme court discussed the differences in the two types of bonds in Mississippi – a cost or appeal bond, and a supersedeas bond, in the context of an appeal from county court to circuit court under Mississippi Code Annotated section 11-51-79 (Rev. 2002). *Lyons*, 87 So. 3d at 448-49 (¶13-14). This code section is similar to section 11-51-93 in that the type of bond is unspecified. Also, section 11-51-79 "specifically states that the appeal does not operate as a supersedeas unless it would be before the Supreme Court." Therefore, the *Lyons* court found the bond required for this type of appeal was "a cost bond [or more commonly called

---

in all cases, giving bond, with security, to be approved by the judge or clerk of the circuit court, as in cases of appeal from justices of the peace; and in any cause so removed by certiorari, the court shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings.

Miss. Code Ann. § 11-51-93.

an appeal bond], not a supersedeas bond." *Id.* at 449 (¶15). "The purpose of a cost bond is to cover [only] the cost of the appeal, including preparing the record from the court below." *Id.* at 448 (¶14). "A supersedeas bond is meant to cover the entire amount of the judgment in the event that the appellant is not successful" and is to "stay execution on a judgment during the pendency of the appeal." *Id.* at 449-50 (¶¶16-17) (citing Black's Law Dictionary 202 (9th ed. 2009)). A supersedeas bond is "not cash, but . . . a written guarantee of payment that serves to stay execution of a judgment being appealed." *Id.* at 450 (¶18). Under the Uniform Circuit and Chancery Court Rule 5.08, a supersedeas bond must be posted in the amount of 125 percent of the judgment, but "upon application the court may reduce the amount of the supersedeas bond." *Id.* at (¶17).

¶16. Avery contends section 11-51-93 in all likelihood refers to a cost bond because the statute states the "writ" – not the filing of a bond "shall operate as a supersedeas." Also, a supersedeas bond appears to be incongruent with the proceeding here: there is no monetary judgment involved, and no execution of a judgment to stay. We agree. However, Avery claims that she has satisfied the cost bond requirement because she has paid the filing fee and the cost to prepare the record in the circuit court for the appeal to this Court.

¶17. The University agrees that the statutory bond at issue is a cost or appeal bond, but the University rejects Avery's contention that she satisfied the bond requirement by payment of filing fees and court costs to this Court. We agree that Avery never posted a bond in the circuit court to secure those appeal costs, including the PARB record, if and when the circuit court issued the writ.

8

¶18.   Further, we agree with the University's contention that section 11-51-93's bond requirement is jurisdictional.  In *Smith v. University of Mississippi*, 797 So. 2d at 962 (¶20), also an employment termination case, the supreme court noted it has previously held "failure to post the required appeal bond under section 11-51-93 is a jurisdictional issue."  (Citing *Miss. State Pers. Bd. v. Armstrong*, 454 So. 2d 912, 914-15 (Miss. 1984)).  In *Smith*, the employee-engineer appealed the termination decision to the PARB, which denied the appeal and affirmed his termination.  *Id.* at 958 (¶¶3, 6).  Instead of filing a petition for writ of certiorari in the circuit court under sections 11-51-93 and -95, Smith filed a separate action in the chancery court seeking reinstatement of his position or damages.  *Smith*, 797 So. 2d at 958 (¶6).  The chancery court transferred the action to the circuit court, which granted the University's motion to dismiss.  *Id.* at 959 (¶8).  Because the former employee completely failed to file a petition, affidavit, and post bond with security within six months of the PARB's decision, the supreme court found the circuit court's dismissal proper because that court lacked jurisdiction.  *Id.* at 962 (¶20).

¶19.   The supreme court has more recently affirmed this long-standing rule in *T. Jackson Lyons & Associates P.A. v. Precious T. Martin Sr. & Associates PLLC*, 87 So. 3d at 451 (¶22).  Although *Lyons* involved a different statute – section 11-51-79 – the same rationale applied.  Statutory bond requirements are jurisdictional, and cost bonds are a statutory requirement for an appeal.  *Id.* at 451 (¶¶22-23).  Further, "[a] supersedeas bond is not jurisdictional unless a statute governing a certain type of appeal specifically requires a supersedeas bond."  *Id.* at (¶23).  Therefore, regardless of whether the bond required of

section 11-51-93 is a cost or supersedeas bond, the bond is jurisdictional because the statute requires it.

¶20. Avery additionally argues that section 11-51-93's bond requirement is nullified because the statute is trumped by the Uniform Circuit and County Court Rule 5.08, which involves supersedeas bonds. Rule 5.08 provides that regarding appeals of cases where there is no monetary judgment, "the court may grant a supersedeas upon proof of the party requesting the same, applying the same standards as for a preliminary injunction." Avery claims this language conflicts with section 11-51-93, which she states "requires a supersedeas bond to be posted 'in all cases' when an appellant files a writ of certiorari." Avery cites *Brown v. Collections Inc.* 188 So. 3d 1171 (Miss. 2016), in support of her argument.

¶21. *Brown* involved an interlocutory appeal from county to circuit court under section 11-51-79. *Brown*, 188 So. 3d at 1177 (¶21). The supreme court found a conflict between that statute and Rule 4.06 (now Rule 4.05), which provides that "[a]n appeal from an interlocutory order in county court *may* be sought in the Supreme Court under Rule 5 of the Mississippi Rules of Appellate Procedure." (Emphasis added). In this context, the supreme court stated that when such a conflict exists between the statute and the rule-based interlocutory appeal procedure, "our court's rules trump statutory law." *Id.* at (¶22).

¶22. We are not persuaded, however, by Avery's argument that there is a conflict between Rule 5.08 and section 11-51-93. First, the bond required in section 11-51-93 does not appear to be a supersedeas bond, but a cost bond, an interpretation with which both Avery

10

and the University agree. Since Rule 5.08 involves a supersedeas bond, it is not applicable here. And if there is no conflict between the rule and statute, there can be no "trumping" of the statute by rule.

¶23. The University filed a supplemental citation claiming the recent case of *Belmont Holdings LLC v. Davis Monuments LLC*, 253 So. 3d 323 (Miss. 2018) controls the outcome of this appeal. While we do not find *Belmont* dispositive of the case in favor of the University, we do find it undermines Avery's argument on the conflict of the rule and the statute.

¶24. *Belmont* involved the dismissal of an appeal from county to circuit court and involved the same statute as *Brown*. *Id.* at 324 (¶¶1-2). The issue was whether the circuit court lacked appellate jurisdiction because the appellant, Belmont, failed to pay the cost bond within the required time period of the applicable statute – section 11-51-79. *Belmont*, 253 So. 3d at 323 (¶4). Belmont argued that the statute's requirement of a cost bond conflicted with Mississippi Rules of Appellate Procedure 3(a) (providing timely filing of a notice of appeal is the only requirement to perfect an appeal) and 11(b)(1) (requiring prepayment of a cost bond). *Belmont*, 253 So. 3d at 326 (¶13).

¶25. The supreme court, however, rejected this argument, finding the Mississippi Supreme Court "repeatedly has held that statutory cost bonds are jurisdictional – that is, they related to a court's appellate jurisdiction." *Id.* at 328 (¶20) (quoting *5K Farms Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 227 (¶22) (Miss. 2012)). The supreme court also cited as analogous two cases that involved the statute at issue here (section 11-51-93): *Jackson State*

*University v. Upsilon Epsilon Chapter of Omega Psi Phi Fraternity Inc.*, 952 So. 2d 184, 186 (¶5) (Miss. 2007) (holding that, because plaintiff "fail[ed] to file a petition for writ of certiorari and to post a bond with security [in accordance with statute], the circuit court did not have jurisdiction . . . .") and *Mississippi State Personnel Board v. Armstrong*, 454 So. 2d 912, 915 (Miss. 1984) ("Th[e] Court has repeatedly held that statutory bond requirements are jurisdictional."). *Belmont*, 253 So. 3d at n.4. Accordingly, to the extent Avery challenges the validity of sections 11-51-93 and -95, that challenge fails under *Belmont*: "It is the prerogative of the Legislature to set the appellate jurisdiction of circuit courts; it is not the Court's prerogative to establish jurisdiction through rules of procedure." *Belmont*, 253 So. 3d at 330 (¶30). Moreover, *Belmont* confirmed *Lyons*'s explanation distinguishing cost bonds and supersedeas bonds. *Belmont*, 253 So. 3d at 329 (¶¶23, 25).

¶26. We find a cost bond was required in this instance as it is jurisdictional, and Avery's payment of court fees and costs did not satisfy the requirement.

## II. Extenuating Circumstances

¶27. Avery next argues that if this Court finds she must post a bond under section 11-51-93, we must consider whether her failure was excused by extenuating circumstances. We find merit in this argument. Such unique factual circumstances exist here that her failure to post bond can be excused by extenuating circumstances. Accordingly, dismissal was improper.

¶28. The supreme court "has recognized that a failure to meet the statutory requirements may be excused by extenuating circumstances." *Armstrong*, 454 So. 2d at 915 (citing

12

*Moran v. Necaise*, 437 So. 2d 1222 (Miss. 1983)). *Armstrong* involved the same statute as here. A state employee attempted to file an appeal of his termination to the circuit court. *Id.* at 913. His petition for writ of certiorari was filed within the six-month deadline, but the bond was posted six days after the deadline. The circuit court granted the employer's motion to dismiss because the employee failed to file timely the appeal bond under section 11-51-93. *Id.* at 914. While acknowledging in some circumstances statutory requirements may be excused, the supreme court found none there, and affirmed the dismissal for lack of jurisdiction. *Id.* at 915.

¶29. *Armstrong* cited *Moran* and *Allgood v. Allgood*, 367 So. 2d 450 (Miss. 1979) (overruled by *Moran* on other grounds), which pertain to allowing an extenuating-circumstances exception, although under different statutes. *Allgood* involved an appeal to the supreme court under the old statutory appellate process before adoption of the Mississippi Rules of Appellate Procedure. *Id.* at 451. The appellant filed an appeal bond within the forty-five day deadline, but failed to meet a new statutory requirement for prepayment of court costs and a filing fee. *Id.* at 450-51. While finding the requirement jurisdictional, the supreme court permitted an exception under the unique factual circumstances of the case because of the enactment of a new statute, the appellant's making a good faith effort to perfect the appeal under the old statute, and the trial-court clerk's failing to present a required bill of cost. *Id.* at 451-52. *Moran*, citing *Allgood*, found the appeal to the supreme court should not be dismissed due to extenuating circumstances, which included remaining confusion "regarding applicable procedures to be taken in appeals

13

from lower courts" due to inconsistent appellate processes and earlier conflicting decisions. *Moran*, 437 So. 2d at 1225.

¶30. The University argues none of these specific circumstances exist here and thus Avery's failure to post bond should not be excused. We disagree. Avery's counsel filed an affidavit detailing his difficulties in posting a bond, which he described as a "quandary." On September 29, 2017, the day the petition was filed, Avery's counsel spoke with the circuit court clerk about setting the bond and was advised the judge must do it. Counsel then advised the University about the filing and bond issue. This action occurred on a Friday, and the deadline fell on the next day – Saturday. The following week, which was admittedly past the six-month deadline, counsel tried to meet with Judge Howorth about the bond but was advised he and the other judges of the district were all recusing from the case. On October 10, 2017, the order of recusal was entered. At this point, there was no judge available to set the bond; so Avery's counsel had to wait until a judge was assigned to the case. Avery's counsel filed a motion to determine or set bond on October 19, 2017, approximately twenty days after the deadline, in order to address the bond issue once a judge was assigned. On October 27, 2017, Judge McClure was appointed. On November 3, 2018, Avery's counsel sent him the motion and requested a hearing once the University responded to his petition. The University did not enter an appearance in the case or respond to the petition until November 28, 2017.

¶31. At the hearing on January 28, 2018, however, the trial judge was unclear why the delay in posting bond had occurred. The judge noted it had been over sixty days since the

14

notice of appeal (the petition for writ of certiorari) had been filed, and the bond was not yet set. He stated he was not contacted in November or early December to set a hearing after the motion to set bond was filed. Therefore, he found Avery had not proved extenuating circumstances, citing *Moran*. However, Avery did request a hearing within seven days of Judge McClure's appointment via the motion and letter of November 3. It is unclear from the record why a hearing on the bond motion was not scheduled before January 28. Instead, the failure to post bond was discussed at the January 28 hearing only in relation to the University's motion to dismiss, which was contingent on this failure.

¶32. The University makes much of the fact that Avery waited until one day before the six-month deadline to file her petition and attempt to post bond. While it is true that often more time is needed for these tasks, the record is clear that even if Avery could have reached Judge Howorth on Friday, September 29, or Monday, October 2, he could not have set bond because he was going to recuse. We find Avery encountered unusual, extenuating circumstances that thwarted her attempt to post a timely bond. We cannot say, as the University does, that Avery's counsel was not diligent in attempting to post bond. We find the trial court erred in not finding extenuating circumstances and thus erred in granting the University's motion to dismiss her appeal.

### III. Appeal of PARB Decision

¶33. The University suggests that Avery should have appealed the chancellor's May 2017 final decision upholding the original termination and the PARB's decision but instead, Avery erroneously filed a petition for writ of certiorari appealing only the PARB decision.

15

The University claims the PARB decision was not "final" until the chancellor ruled on it, and the chancellor's decision is the one from which she should have filed for certiorari.

¶34.    The University did not raise this issue before the trial court; accordingly, it is waived. *Durham v. Univ. of Miss.*, 966 So. 2d 832, 837 (¶12) (Miss. Ct. App. 2007).   Waiver notwithstanding, the University does not provide any legal support for this argument.   In *Smith*, the University argued that because the terminated employee did not appeal the PARB's decision to the circuit court within six months, that decision was final.  *Smith*, 797 So. 2d at 960 (¶14).   Here, the University claims Avery erroneously appealed the PARB decision.   In *Smith*, there is no mention of the chancellor's review.

¶35.    Section 11-51-95 controls this case, and provides for the right to appeal decisions of "tribunals inferior to the circuit court."   Such "tribunals" are the "hearing panels at state universities . . . whose employment decisions may be reviewed by writ of certiorari pursuant to [section] 11-51-95."  *Smith*, 797 So. 2d at 959 (¶9).   There is no indication how the chancellor's decision fits within the statutory framework for an appeal.[3]  A letter by the Senior Assistant Human Resource Director dated March 30, 2017, gave Avery the opportunity to appeal to the chancellor of the University, and she did.  There is no statutory provision for judicial review of the University chancellor's decision, just that of the "inferior tribunal."  To follow the statute and the letter, Avery would need to appeal to the chancellor

---

[3] Here, the University chancellor merely wrote a short letter to Avery finding "the original decision terminating" her employment and the PARB decision upholding her termination were "supported by substantial evidence," and "that neither decision was arbitrary or capricious."  The University has cited no authority that the chancellor's decision is afforded any deference beyond that afforded the PARB decision.

within seven days of the PARB decision and to the circuit court within 180 days of the PARB decision. This is exactly what she did.

¶36. We recognize, as do the parties, that there is some confusion as to whether the PARB's decision or the chancellor's letter should serve as the starting date for calculating the six-month appeal deadline. No Mississippi cases appear to consider the appeal from the decision of a university chancellor or president rather than from the "tribunal inferior to the circuit court," such as the PARB. Regardless, if Avery had appealed the chancellor's letter of May 16, 2017 affirming the PARB decision, and this date was considered the starting date, the appellate deadline would be in November 2017, and Avery's appeal was well within the six-month deadline. We find no error with Avery's appealing the PARB decision.

## CONCLUSION

¶37. We find a cost bond was necessary in this appeal of Avery's employment termination; however, extenuating circumstances excused her failure to post bond. Therefore, the trial court erred in dismissing her petition for writ of certiorari for lack of jurisdiction. This Court reverses and remands for further proceedings consistent with this opinion.

¶38. **REVERSED AND REMANDED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**